### MAYFIELD *v.* THE SAVANNAH, GRIFFIN AND NORTH ALABAMA RAILROAD COMPANY.

1. The locomotive engineer from whose negligent act the injury complained of was sustained, is an agent of the corporation within the meaning of the statute of October 29th, 1889, and he being dead, the person injured is an incompetent witness to testify in his own behalf to such negligent act, it not appearing that any surviving officer or agent of the corporation was present.

2. A custom or usage obviously dangerous, and the facts alleged in the plaintiff's declaration showing that it would be dangerous, is not admissible to excuse contributory negligence by the plaintiff, more especially where it did not appear that such custom or usage had been adopted by the defendant, or that it prevailed at the place or on the particular railway concerned.

3. That the plaintiff acted cautiously is a conclusion, not a mere fact, and he is not competent to testify in general terms that he so acted.

4. Where an employee of a railroad engages another person to work in his place, private instructions given by the former to the latter as to how the work should be executed are not competent evidence to affect the company.

5. There was no error in granting a nonsuit.

July 13, 1891. By two Justices. Argued at the last term.

Witness. Agent. Negligence. Evidence. Nonsuit. Before Judge BOYNTON. Spalding superior court. August term, 1890.

Reported in the decision.

G. W. AUSTIN, BRYAN & DICKEN and COBB & WALKER, by brief, for plaintiff.

HALL & HAMMOND, for defendant.

SIMMONS, Justice.

Mayfield sued the railroad company for damages for a personal injury, which he alleged was sustained by him while in the discharge of his duty as an employee of the company, in attempting to couple the engine to a car. The declaration alleged, among other things, that the injury was caused by the careless and negligent jerking

and driving of the engine, and that the machinery was defective in that the foot-board or rim around the pilot, on which plaintiff stepped to make the coupling, was too narrow to make a secure footing at such a point of danger. The plaintiff was introduced as a witness in his own behalf, and being asked how he came to be hurt, said: "As I went to get upon the cow-catcher, the engineer put on steam, which caused the engine to jerk violently forward and my foot to slip." Defendant objected to this testimony, on the ground that Carroll, the engineer, was dead, and plaintiff, under the act of 1889, could not testify in his own favor. The objection was sustained, and the plaintiff excepted. Being asked by counsel "what was the usual custom in making such couplings of such engines and cars," defendant's counsel objected to the proof of "usual custom"; the court sustained the objection, and plaintiff excepted. Plaintiff also testified that, in order to make the coupling, he had to get upon the rim of the pilot, which was about one and a half inches broad; it is broad enough to be safe by practice and by being careful; he had always done it with safety before; he was very cautious in getting on there. Defendant's counsel moved to rule out the witness's answer that he got on there very cautiously. The court sustained the motion and ruled out the answer, to which plaintiff excepted. Plaintiff also testified that he was working that day for the company in the place of Robinson, and that Robinson told him to get upon the pilot as he himself had always done. Defendant moved to rule out this answer, which motion was granted, and plaintiff excepted. Plaintiff having closed his case, on motion of defendant's counsel the court granted a nonsuit, to which plaintiff excepted. These are the questions made in this bill of exceptions for decision by this court.

1. Was the court right in ruling that the plaintiff

.could not testify as to any transaction that occurred with Carroll, the engineer, he being dead at the time of the trial? The act approved October 29th, 1889 (pamphlet p. 85), declares: "Where any suit is instituted or defended by a corporation, the opposite party shall not be admitted to testify in his own behalf to transactions or communications solely with a deceased or insane officer, or agent of the corporation, and not also with surviving and sane persons, officers or agents of said corporation." It was contended by counsel for plaintiff in error that the deceased engineer was neither an officer nor an agent of the corporation within the meaning of this section of the act, but was a mere servant of the company, and that therefore the court erred in not allowing plaintiff to testify to what the engineer did at the time plaintiff was injured. "While the line of demarcation between the relation of principal and agent and that of master and servant is exceedingly difficult to define," we are inclined to think, under our code, that the engineer was such an agent as was contemplated by this act. Section 2202 of the code declares that "The principal is not liable to one agent for injuries arising from the negligence or misconduct of other agents about the same business." Section 3033 declares that "A railroad company shall be liable for any damage done to persons . . by the running of the locomotives, or cars, . . unless the company shall make it appear that their *agents* have exercised all ordinary and reasonable care and diligence." Section 3034 declares that: "No person shall recover damage from a railroad company for injury to himself . . If the complainant and the *agents* of the company are both at fault, the former may recover. . . These sections seem to us to treat employees of corporations as agents thereof in their particular lines of duty, and this court, in construing these different sections, has frequently treated

them as agents. The legislature, knowing of these sections of the code and the construction placed upon them by this court, must have used the words in the act under consideration in the same sense. And when they provided that the opposite party shall not testify in his own behalf to transactions or communications solely with a deceased or insane officer or agent of the corporation, they meant, in our opinion, to include employees of the corporation as agents thereof. And there is good reason for putting this construction upon this section of the act. The case now under consideration shows the necessity of such construction. We gather from the bill of exceptions and the argument of counsel that the purpose was to prove by this witness that, just as he had put one foot upon the rim of the pilot, the engineer put on steam and this caused a jerk in the engine. If the engineer saw him attempting to mount the rim of the pilot and put on the steam, thus causing the engine to jerk, it would have been a negligent act on his part, and the jury would likely have found a verdict for the plaintiff, if nothing else had appeared to show that the plaintiff was not entitled to recover. The engineer, being dead, could not contradict or answer the plaintiff's evidence if it was untrue, and the company, on this vital point, would have been at the mercy of the plaintiff. It is argued also that this was not a transaction between the plaintiff and the engineer, but a single act on the part of the engineer himself, and therefore did not come within the terms and meaning of the statute. We think the act of the engineer is covered by the word "transaction" used in this section. The plaintiff was attempting to mount the pilot, the engineer put on the steam, causing the engine to jerk, and the plaintiff was injured. This was a transaction about which one party is forbidden to testify, the agent of the opposite party being dead. There was no error, therefore, in ruling out plaintiff's testimony upon this point.

2. There was no error in ruling that the usual custom in making car-couplings was not admissible. It will be observed that the witness was not asked as to the custom of this particular railroad, nor as to the custom of the railroad at the particular place where he was injured, but was asked as to the usual custom of making car-couplings on such engines. We do not think that this was sufficient to bind the company, the custom, if it existed, being obviously dangerous, and the declaration alleging that "the machinery was defective in that the foot-board or rim around the pilot, on which plaintiff stepped to make the coupling, was too narrow to make a secure footing at such a point of danger." As to inadmissibility of usage or custom to excuse negligence, see Deering on Negligence, §9; Bailey v. New Haven, etc. Co., 107 Mass. 496; Hill v. Portland R. R. Co., 55 Me. 438; Hamilton v. Des-Moines, etc. R. R. Co., 36 Iowa, 32; Cleveland v. Steamboat Co., 5 Hun, 523; Miller v. Pendleton, 8 Gray, 547; Kuhns v. Wisconsin R. Co. (Iowa), 31 N. W. Rep. 868; Larson v. Tobin (Minn.), 44 N. W. Rep. 1078; Whitsett v. Chicago R. R. Co. (Iowa), 22 Am. & Eng. R. R. Cas. 336; Central R. R. v. DeBray, 71 Ga. 407(14); and cases cited in Savannah, etc. R. Co. v. Flannagan, 82 Ga. 589.

3. There was no error in ruling out plaintiff's answer that he got on the pilot very cautiously. A witness may state facts, but not his own conclusion from those facts. This was a conclusion of the witness, and was the very question which the jury was to decide, whether he had got upon the pilot cautiously or carelessly. It was the same as if he had said that he was not negligent in getting upon the pilot. He might have stated whether he attempted to mount hurriedly or slowly; how far he was from the engine when he raised his foot to make the attempt; where he placed

his foot, and things of that sort, leaving the jury to say from these facts whether it was done cautiously or carelessly.

4. Nor was there error in ruling out plaintiff's answer to the question of defendant's counsel, that Robinson told him to get upon the pilot as he himself had always done. It appears from the evidence that Robinson was a car-coupler himself, and had hired this plaintiff for that day to work in his place. We do not think that any instruction which Robinson may have given him when he hired him to work in his place would be admissible to bind the company.

5. The next exception complains that the court erred in granting a nonsuit under the evidence in the case. We do not think so. The evidence shows that the engine was moving at the rate of four or five miles an hour; that there was a rim one and a half inches broad around the pilot; and that the plaintiff undertook to mount this rim and stand on a space only an inch and a half broad, while the engine was in motion at that rate of speed. It seems to us that this was clearly an act of negligence, if not gross negligence. This act was as negligent as the act in the case of *Roul* v. *East Tenn., etc. R. R. Co.*, 85 *Ga.* 197, 11 S. E. Rep. 558, if not more so. There the plaintiff undertook to mount the engine by the steps and was injured, and we held that he could not recover. Here he undertook to jump from the ground and light upon a rim only an inch and a half broad, without anything to hold to, so far as appears from anything in this record, after he had got upon the rim.          *Judgment affirmed.*