ATLANTA, KNOXVILLE AND NORTHERN RAILWAY COMPANY *v.* ROBERTS.

1. There was no error in overruling the motion for a nonsuit.
2. None of the grounds set out in the motion for a new trial present any legal reason for setting aside the verdict, which was authorized by the evidence, and which is not excessive.

Argued October 8, — Decided October 31, 1902.

Action for damages. Before Judge Gober. Cobb superior court. July 7, 1902.

*Smith, Hammond & Smith, J. P. Perry*, and *Clay & Blair*, for plaintiff in error.
*N. A. Morris, M. J. German*, and *E. P. Green*, contra.

LITTLE, J. Roberts brought suit against the Atlanta, Knoxville and Northern Railway Company to recover damages for personal injuries which he alleged he sustained by the running and opera-. tion of a car belonging to the defendant, by the negligence of the servants and agents of the company. The defendant denied generally all the allegations of the petition. The trial resulted in a verdict for the plaintiff. Defendant submitted a motion for a new trial, which being overruled, it sued out a bill of exceptions, in which error is assigned to the overruling of its motion for a nonsuit made at the conclusion of the evidence for the plaintiff, and

to the overruling of the motion for a new trial.    The truth of certain evidence on the part of the plaintiff is practically uncontested, to wit: that plaintiff had been employed by Long to load bark in a car belonging to the defendant, which by it had been placed on a side-track at Ellijay; and that while in the car, a locomotive belonging to defendant was attached to it for the purpose of drilling or switching, and while the car was being moved on the track it was derailed and overturned.  'It was also uncontested that the plaintiff was injured.    It is claimed, however, by the company that he was injured by jumping from the car after it had stopped, and when there was no further danger; and it is urged that plaintiff saw the freight-train, the locomotive of which was doing the switching, at the time it came in, that he knew it was coming in on his track, and that he ceased his business of packing the bark, and sat on it for the purpose of holding it in place; that the company had no knowledge or notice that the plaintiff was on the car; that the plaintiff knew it was going to be moved; that he was not a passenger, nor was he injured while loading or unloading the car, but that he remained in the car without making his presence known; that he could have left it at any time, and it was his duty either to have made his presence known or to have left the car; and that under these circumstances, as the evidence shows that the plaintiff was not intentionally or wilfully injured, the company was not liable.

1.  We are of the opinion that the court did not err in overruling the motion for a nonsuit.    It is apparent from the evidence in the case that the company placed the car on the side-track for the purpose of allowing it to be loaded with bark by Mr. Long.    In doing so it did not lose the right of control over the car, nor the right to change its place on its tracks, as its convenience required.    When it placed the car on the side-track to be loaded, it did so with the knowledge that it would be occupied by Long or his employees from time to time until the loading was completed.    This knowledge carried with it a duty to operate and move the car in such a manner, and on such notice to those engaged in loading or being therein in connection with that business, as would not place them in danger.    These propositions being sound, as we think, and the evidence certainly authorizing a verdict that this duty was not met, the trial judge would not have been warranted in withdrawing the

case from the jury and ruling that the evidence for the plaintiff did not entitle him to a recovery. There was, therefore, no error in overruling the motion for nonsuit.

2. A number of grounds are set out in the motion for a new trial. We have carefully considered these, and the reasons submitted why the trial judge erred in charging the jury in different particulars, in ruling on the admissibility of evidence, and in failing to charge. None of these grounds, in our opinion, present a cause sufficient to set aside the verdict which was rendered. It is our opinion that the judge did not err in instructing the jury in the language of the Civil Code, § 2321; nor in failing to charge that the provisions of law contained in that section were not applicable in case the jury should find that the plaintiff was not injured by the running of defendant's cars, but, in the latter event, the rights of the parties should be determined by other and different rules. There was no request that the latter proposition should be given in charge. If there had been, it would not, as we interpret the evidence, have been authorized. There is no question that the car in which the plaintiff remained was derailed and overturned while being moved on the track of the defendant company, and from the evidence in relation to the cause of such derailment the jury would have been fully authorized to say that it was caused by the want of proper care and diligence on the part of the agents of the company. Nor does there seem to be any serious contention that the plaintiff was not injured while jumping from the car which was derailed and turned over. Although he w,as, it does not necessarily follow that the company was not responsible for the damage which the plaintiff so sustained. The rule governing such liability, as announced by this court in the case of *Southwestern R. Co.* v. *Paulk*, 24 *Ga.* 356, is this: " If through the default of a corporation or its servants the passenger is placed in such a perilous condition as to render it an act of reasonable precaution, for the purpose of self-preservation, to leap from the cars, the company is responsible for the injury he receives thereby; although if he had remained in the cars he would not have been injured." In the case of *Smith* v. *R. Co.*, 83 *Ga.* 671, after the misconduct of the company in threatening the plaintiff with a collision had been established, Chief Justice Bleckley, in discussing this question says: " The open question is, whether the plaintiff, after discovering the

danger, acted recklessly or rashly and thus brought upon himself a calamity which he might have avoided by more discreet conduct. All the authorities concur in holding that the duty of the person for his own safety, in such an emergency, is not to be measured by the ordinary standard, but that allowance is to be made for the state of his emotions. The authorities to this effect which might be cited amount to scores, if not hundreds."

The contention here is that the plaintiff was not injured by the running of the cars, but because, recklessly, when there was no occasion to do so, he jumped from the car and was injured; and that therefore the court without request should have charged the jury (practically) that if they found such to be the fact, then the rule that the company was liable for damages sustained by the operation of the cars would not apply. If the evidence as a whole be tested by the principles of law extracted from the decisions in the cases above cited, it will be found that such a charge would not have been warranted. The evidence shows that at the time the car was derailed the plaintiff, who had been packing the bark in one end of the car, had placed a plank on it, and sat upon the plank to prevent the bark from being disarranged by the movement of the car; and that he had been employed by Long to load the car. It is true that one of the witnesses, who testified that his attention was attracted by the noise of the car jumping over the ties, said that when he looked the car was off the track and going slowly; that it seemed almost to stop and then lean, and gradually to turn over; that it fell on its side; that he saw the plaintiff, looking very much alarmed, come out of the car and jump off; and, at the time, the car had stopped and was lying on its side. This same witness, however, in another portion of his evidence further said that he looked at the car, and a considerable dust arose when it fell, and just as the dust fell he saw plaintiff come out of the top of the car and jump off. Another witness testified that when he noticed the cars he saw that some of the wheels were off the rails, running on the ties. He then saw the car turn over with the door up, and just about the time the car turned over the plaintiff came out of the door. Still another witness for the railroad company testified that when he first saw the plaintiff he was coming out of the door of the car, and the car was then turning over. The plaintiff himself testified that as the car went to turn over he endeavored

to jump out of it. No part of this evidence, when fairly interpreted, would authorize the jury to find that the plaintiff was not injured by the running and operation of the cars, because it does not authorize the conclusion that the plaintiff in jumping was not in such a perilous position as to render the act of jumping a reasonable precaution for the purpose of self-preservation. He was in the car when it first left the rails and ran upon the ties, and then upset; and if any allowance be made for the state of mind of a person placed in such a situation, it would be unreasonable to say that such a one, when he attempted to leave the car as quickly as he possibly could, and by the readiest means he could, would have been either rash or reckless.

Nor do we think there was any error on the part of the trial judge, of which the defendant can complain, in admitting evidence of the plaintiff himself in relation to the accident. The specific ruling complained of was made by the judge in the following language: "He [plaintiff] can testify as to the track. . . I don't think he can testify as to the way the engineer came back. The transaction is his getting hurt or as to how he struck it. I don't think this man is a competent witness as to how he came back, or as to anything that was within the immediate knowledge of the engineer. As to how he was hurt, I don't see why he should not testify as to that," etc. Counsel for plaintiff in error refer us to the case of *Mayfield* v. *Railroad Co.*, 87 *Ga.* 374. The ruling in that case was to the effect that a locomotive engineer, from whose negligent acts an injury is sustained, is an agent of the corporation, and being dead, the person injured is an incompetent witness to testify in his own behalf to such negligent act, it not appearing that any surviving officer of the corporation was present. The evidence in that case, which was objected to, tended to show that the engineer was guilty of a negligent act, in consequence of which the plaintiff was injured; and the ruling was clearly made that a witness was incompetent to testify in his own behalf to such act, because it was a transaction between the plaintiff and an agent of the company. But in this case the court did refuse, on objection, to permit the witness to testify as to the way the engineer came back; and also ruled that the transaction was plaintiff's getting hurt, and that the witness was incompetent as to anything that was within the immediate knowledge of the engineer; but ruled that

the witness could testify what he was doing prior to the time he was hurt. In our opinion this ruling does not conflict with the principle laid down in the case cited. What the witness was doing at the time he was hurt, in the light of the evidence, certainly did not relate to any transaction between himself and the dead engineer. Nor do we think the court erred, under the principle ruled in the case cited, in allowing the witness to testify to the independent fact that the car was running at the rate of seven or eight miles an hour at the time it was turned over, and that he attempted to jump out at the time it was turning over, etc. The rate of speed of the car was not a transaction between the plaintiff and the engineer of the company, in any sense. The plaintiff was not connected with it by any act of his. The transaction ruled on in the *Mayfield* case, supra, was the act of the injured person in attempting to get on the cow-catcher of the locomotive, and the act of the engineer at this particular time in putting on steam, causing the locomotive to jerk violently forward, which act it was alleged caused the injury. The transaction discussed and passed on in that case referred to the act of two parties, one of whom was injured, in his attempt to do something which he had a right to do, by a concurrent act of the party who was deceased.

We further think that the court committed no error in charging the jury that the plaintiff would be entitled to recover for the pain and suffering that he sustained which was attributable to the wrongful or negligent act of the defendant, if the defendant was liable in damages to him therefor. The objection to this charge was that it expressed an opinion that the conduct of the defendant was wrongful or negligent. We do not think the objection is a good one, especially when this extract is construed with reference to the whole charge. Our conclusion is that for none of the reasons set out in the special grounds of the motion for new trial should the judgment be reversed; nor is the verdict contrary to the evidence in the case. Nor can we say that the sum of four hundred and seventy-five dollars, found as damages for the injury which the plaintiff sustained, is excessive under the evidence relating to the character of the injury and the necessary and accompanying pain and suffering naturally incident thereto.

*Judgment affirmed. All the Justices concurring, except Lumpkin, P. J., absent.*