## GEORGIA RAILWAY & ELECTRIC CO. *v.* GILLELAND.

1. Where suit was brought by a man for a personal injury, and after his death pending the action his administratrix was made a party, and on the trial it was shown that before the injury the decedent was a strong and vigorous man, and that after it he lost time from his work and at night was restless and did not sleep well, there was no error in permitting his wife to testify that "his restlessness and sleeplessness were indicated to her by his being restless and twisting around, and he would get up sooner than usual," and that "I noticed when he got up he would place his hand on his hip and stand for a moment before he would start to walk off." Such evidence was not objectionable on the ground of being hearsay.

2. After showing the injury, there was no error in permitting the physician who treated the injured person to testify, "In dressing his shoulder you couldn't dress the shoulder without your moving the arm, and, when you would move the arm he would complain of pain. That is about the only way I could tell it."

3. In an action to recover damages for a physical injury, it was competent for a witness who knew the injured person well and who saw

him frequently both before and after its occurrence to . testify that "He was more stupid after the injury than before. . . . As to his appearance or his manner, I could hardly say except in a general way, except that he was more stupid after than before."

4. Where the injured person was confined to his home for several weeks and then returned to work, though there was some evidence to indicate that he continued to suffer, and where some months later he had a spell of sickness, and about a year thereafter he again became sick and died, it was not competent to prove the amount of the physicians' bills incurred in the two spells of sickness, unless it were shown that they resulted from the injury.

5. It being contended that the motorman on a street car was negligent, in a suit by an injured passenger, where the motorman was introduced as a witness for the defendant, it was not proper, on cross-examination, to allow him to be asked, "Didn't you feel that the lives of the passengers were in a measure under your keeping;" and to admit his answer, "Certainly, I felt that their lives and safety were in my hands."

6. In a suit by a passenger against a street-railway company on account of a personal injury, after a presumption of negligence arises from the evidence, in order to rebut it the defendant must make it appear from the evidence that its agents or servants exercised extraordinary care and diligence in connection with those things in which it was charged that its negligence consisted.

7. It was not an accurate statement of the doctrine of an emergency created by a carrier of passengers, placing a passenger in a perilous condition, on account of which he leaped from a car, to charge, "If you believe that the plaintiff, at the time that he jumped from the car, was acting under a reasonable apprehension, that is to say, the apprehension of a prudent man, that he was under circumstances— that he might receive an injury, he would not be guilty of contributory negligence in jumping from the car."

8. Where a petition alleged that, a short distance beyond the point at which a passenger sprang from a moving street-car and was injured, there was a curve in the track which was in bad condition or improperly constructed, and the only evidence on the subject was introduced by the plaintiff and showed that the curve was not improperly constructed, in view of the fact that it was a part of a street-car track in a city street and had to be adjusted to the surface of the highway, and negatived the allegation, and there was no evidence that the plaintiff's husband knew of any defect in or danger arising from the curve, if .there had been any, so as to connect it with his leaping from the car, the court should not have given to the jury charges submitting to them whether the curve was improperly constructed, and was in bad condition, and whether the passenger knew of such fact.

Argued June 7.—Decided December 23, 1909.

Action for damages.   Before Judge Pendleton.   Fulton superior court.   October 20, 1908.

*Rosser & Brandon* and *Colquitt & Conyers,* for plaintiff in error.
*James L. Key,* contra.

LUMPKIN, J.  Samuel O. Gilleland brought suit against the Georgia Railway and Electric Company, alleging substantially as follows:  On October 28, 1905, at about one o'clock a. m., plaintiff boarded an electric car of the defendant in the city of Atlanta. The route along which it was intended to pass extended eastward along Hunter street, thence turned southward along Hill street to Woodward avenue, into which it turned.  Plaintiff was a passenger on the car, and with the permission and consent of the motorman and conductor, the car being well filled, he was riding on the front platform.  When the car reached the sharp curve of the defendant's track at the corner of Hill street and Woodward avenue, the motorman, instead of decreasing the speed, negligently continued the high rate of ten or fifteen miles per hour, and the car struck the curve with great force, was derailed, and proceeded for a considerable distance after leaving the rails.  It was jolting with great force, and appeared to be about to turn over.  The plaintiff, seeing the derailment, and that the electricity was flashing up all around the car, started toward the step of the platform, holding on with both hands.  As he reached the step the movement of the car, and the fact that the motorman ran violently against him, caused him to be thrown to the ground and seriously and permanently injured.

The plaintiff died pending the action, and his administratrix was made a party in his stead.  She amended the petition by alleging, in substance, as follows:  After the car crossed Fair street, which was the next cross street before reaching Woodward avenue, the motorman suddenly and negligently turned on the motive power of the car, and the full current of electricity of a high voltage passed through the controller.  This caused the car to start forward at a very rapid rate of speed, and, on account of the condition of the controller and the high voltage of the current in the trolley-wire, caused the controller to "blow up," the current to "arc" and to flare and blaze up in and around the controller stand, setting fire to the insulation and to inflammable material in and about the controller, near to which the plaintiff's husband was standing, thus imperiling his life and safety.  The motorman negligently failed to cut off the current by reversing his controller, as he could easily have done, or by means of the overhead switch, which was easily

within his reach and was provided for the purpose of disconnecting the current in an emergency.  He also failed to apply the brakes, in order to check and arrest the speed of the car.  He abandoned his post of duty, jumped from the car, and left it uncontrolled. After this the car was running at full speed, and immediately in front of it was down grade a hundred feet in length, extending to the curve on Woodward avenue.  Plaintiff's husband was in imminent peril of his life from a wreck, or from the running off and overturning of the car.  In the exercise of ordinary care and diligence in regard to his own safety, he jumped from the car at a point about one hundred feet from the curve.  While he was in peril in the manner stated, the conductor abandoned his post of duty in the rear of the car and negligently failed to disconnect the current by means of the overhead switch, which was easily within his reach. He also failed to apply the brakes or to remove the trolley from the wire, which he could easily have done, and thus disconnected the current from the car.  The defendant negligently maintained a controller which was in bad order, the metal parts which conduct the current being loosened by wear and insecure fastening, and being bent out of position, on account of which the current running through the controller formed a short circuit and "arced," causing the controller to be burned out and the electricity to blaze up.  The defendant maintained its track on the curve in a dangerous condition, the outer rail being two and a half inches lower than the inner one, while it should have been higher.  This condition increased the peril of the plaintiff's husband and the probability of a derailment and wreck of the car as it approached the curve.

The jury found for the plaintiff $1,500.  Defendant moved for new trial, which was denied, and it excepted.

1.  Evidence was introduced tending to show that prior to the injury the husband of the plaintiff was a strong and vigorous man, and that after the injury he lost time from his work and at night was restless and did not sleep well.  His wife, as a witness, was allowed to testify that "his restlessness and sleeplessness were indicated to her by his being restless and twisting around, and he would get up sooner than usual. . . I noticed when he got up he would place his hand on his hip and stand for a moment before he would start to walk off."  Objection was made to the statement quoted, on the ground that the evidence was hearsay.  It was not

subject to that objection, and we do not know of any better way of showing that a man is restless than by observing and stating the character of his actions.

2. The physician who treated the plaintiff's husband after the injury testified, "In dressing his shoulder you couldn't dress the shoulder without your moving the arm, and when you would move the arm he would complain of pain. That is about the only way I could tell it." Objection was made to this evidence as being hearsay. Exclamations or complaints made by a person while being treated by a physician for a personal injury, and apparently made in response to manipulations of his members by the physician, are admissible. Such complaints are not objectionable as hearsay, but are regarded as manifestations of pain, in the nature of the res gestæ of the pain itself, rather than as mere descriptive statements. *Broyles* v. *Prisock,* 97 *Ga.* 643 (4), 646 (25 S. E. 389) ; *Atlanta, Knoxville & Northern Ry. Co.* v. *Gardner,* 122 *Ga.* 82 (11), 99 (49 S. E. 818).

3. The plaintiff's husband was a policeman in Atlanta. Another member of the police force, who served with him and apparently knew him well, and who was on the street car with him when the injury occurred, testified, that he visited the injured man almost every day; that the latter afterward returned to work on the police force; that "he was more stupid after the injury than before; that after the injury his actions were generally slower than before;" that "as to his appearance or his manner, I could hardly say, except in a general way that he was more stupid after that than before." He testified further that later on the injured man was again sick, and the witness visited him; that blood came from Gilleland's ears, that he breathed very fast and short; and that his respiration was fast and weak. The witness first stated that he did not notice the short, quick breathing except when he visited Gilleland while the latter was sick; but later stated that his recollection was refreshed, and that he remembered that while Gilleland was at work, when walking, his breath would become shorter and quicker. Objection was made to the statements quoted above, on the ground that they were conclusions of the witness. After stating his opportunities for observation and his means of knowing, and facts observed by him, there was no error in permitting him to testify that the appearance and manner of Gilleland were more stupid after the injury than

before. *Chattanooga, Rome & Columbus R. Co.* v. *Huggins,* 89 *Ga.* 495 (15 S. E. 848). That a person appears to be angry, or sad, or bright, or stupid may be well known by observation by those familiar with such person, although it is impossible to describe accurately and minutely all of the physical appearances which indicate such states of mind, without employing words which to some extent embody the conclusions reached by the observer. Parker *v.* Boston etc. Steamboat Co., 109 Mass. 449; Commonwealth *v.* Brayman, 136 Mass. 438; Carthage Turnpike Co. *v.* Andrews, 102 Ind. 138, 143 (52 Am. R. 653).

4. After the injury Gilleland was confined to his home for several weeks. Later he returned to work on the police force, though there was some evidence to indicate that he continued to suffer. Some months afterward he had a spell of sickness, and about a year later he again had an attack of sickness from which he died. The physician who treated him immediately after the injury also treated him in his last illness, but not during the intervening spell. The physician who was then with him was not called as a witness, and there was no sufficient evidence to show that such sickness, or the necessity for treatment pending it, arose from the injury. The wife of the injured man referred to this sickness as erysipelas. The doctor who treated him for the injury and also in his last illness testified that "Mr. Gilleland died from endocarditis, brought on by jaundice, that is, he died from jaundice and endocarditis; it was acute endocarditis complicated with jaundice." There was no testimony indicating that the jaundice or endocarditis resulted from the injury. While the wife of the deceased was on the stand as a witness, she was allowed to testify, over objection on the ground of irrelevancy, as to the amount of the doctors' bills incurred in connection with the two spells of illness which her husband had after the injury for which the suit was brought. This was error. Expenses for physicians' bills, in order to furnish an element of recovery for an injury, must be shown to have been the result of the injury and rendered necessary by it. There was no evidence in this case, sufficiently connecting the subsequent spells of illness of the plaintiff's husband with the injury, to authorize the admission of evidence of the amount of the doctors' bills incurred on account of them. Nor should the charge have instructed the jury on that subject.

5. The evidence showed that while the car on which the plaintiff's husband was riding was running down a grade toward the curve, the controller burned out, electric flames flared up near where he was standing on the front platform close to the motorman, and the motorman and nearly all of the other persons on the car leaped from it. While the motorman was on the stand as a witness, he testified, that, when the blaze flared up, he endeavored to cut off the current by turning the controller handle, but could not get it entirely around, as the electricity burned him on the arm; that he then put on the brake, turning it around once, but the blaze was so great that he could not continue to put it on; that Gilleland, in endeavoring to get off the car ran against him and knocked his hand from the brake; and that Gilleland leaped from the car, and the witness followed him. On cross-examination he was asked, "Didn't you feel that the lives of the passengers were in a measure under your keeping?" To this he replied, "Certainly, I felt that their lives and safety were in my hands." This was admitted over objection. There was no contention that the motorman was guilty of a wilful or intentional tort, but only of negligence in regard to the operation of the car. The state of his mind, as to realizing his duties toward passengers, was not in issue. The law fixed the measure of diligence due by a carrier of passengers and its servants. The question was whether or not they fulfilled that duty. If the defendant had sought to exculpate itself by causing its motorman to testify that he did not feel that the lives of passengers were in a measure in his keeping, this would no doubt have been met with a prompt and proper objection. Under the issues in this case, it was not relevant for the plaintiff to prove the state of the motorman's mind in regard to his duties, and the evidence should have been rejected. It may readily be surmised that, whichever way the motorman answered the question, his testimony might furnish the basis for a vigorous argument to the jury. If he answered affirmatively that he felt that the lives of passengers were in a measure in his keeping, it might be urged that, with a full realization, according to his own testimony, that human life was in his keeping, he nevertheless sprang from the car and left passengers upon it. If he answered that he did not feel that the lives of the passengers were in a measure in his keeping, it could be urged that the company's employee admitted that he did not appreciate his duty or have any

sense of obligation toward the passengers, and that the injury was occasioned by the acts of one who had admitted such a state of mind. Thus, not the actual duty of the company and its agents or servants, but an admission of one of such servants as to his realization or appreciation of his duties, could be used by the plaintiff in a suit for a negligent tort, but could not be introduced and used by the defendant in exculpation or mitigation.

6. The court charged the jury as follows: "Our law provides that if a passenger is injured by the running of a car of the defendant, that the defendant shall be liable for that injury, unless the defendant shows that its agents had exercised all extraordinary and reasonable care and diligence in connection with those things that are charged to be negligence by the plaintiff in her petition." Error was assigned in this charge, on the ground that it imposed upon the defendant company a more stringent rule of diligence than that imposed by law. The exact question has been ruled adversely to this contention, in *East Tenn., Va. & Ga. Ry. Co.* v. *Miller*, 95 *Ga.* 738 (22 S. E. 660). By the Civil Code, §2321, it is declared that a railroad company shall be liable for any damage done to persons, stock, or other property, by the running of the locomotives, or cars, or other machinery of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company. By section 2266 it is stated that a carrier of passengers is bound to extraordinary diligence to protect the lives and persons of his passengers. It has been held that the presumption against the railroad stated in §2321 applies in favor of a passenger. *Southern Ry. Co.* v. *Cunningham*, 123 *Ga.* 90 (50 S. E. 979), and cases cited. It is plain that it would be a contradiction in terms to say that the presumption of negligence on the part of the railroad company arises in favor of a passenger upon proof of injury to him arising from the running of its cars, that the measure of diligence due to him is extraordinary care, but that the railroad can free itself from liability by proving ordinary care. Construing the two sections of the code above cited in pari materia, and in the light of previous decisions of this court, the "reasonable care and diligence" referred to in the former section, relatively to a passenger, means extraordinary diligence; and where an injury to a passenger is involved, resulting from the running of the

locomotives, cars, or other machinery of the company, and a presumption of negligence has been raised, the burden rests upon the company to make it appear that not merely ordinary care and diligence, but extraordinary care and diligence, was used.

7. The court charged as follows: "If you believe that the plaintiff, at the time that he jumped from the car, was acting under a reasonable apprehension, that is to say, the apprehension of a prudent man, that he was under circumstances—that he might receive an injury, he would not be guilty of contributory negligence in jumping from the car." This is not an accurate statement of the doctrine of emergency raised by the carrier and acted on by the passenger. The judge informed the jury that if the passenger was acting under a reasonable apprehension "that he might receive an injury," he would not be guilty of contributory negligence in jumping from the car. It is not every reasonable apprehension of a bare possibility of injury which will suffice. Making even the reasonable apprehension of a prudent man that he might receive an injury, as a matter of law, a test of whether it was negligent to jump from a car was erroneous. Nor should the judge have stated to the jury that certain facts would or would not make the passenger guilty of contributory negligence.

In *Southwestern R. Co.* v. *Paulk*, 24 *Ga.* 356, the rule is thus stated: "If, through the default of the corporation or its servants, the passenger is placed in such a perilous condition as to render it an act of reasonable precaution, for the purpose of self-preservation, to leap from the cars, the company is responsible for the injury he receives thereby; although if he had remained in the cars he would not have been injured." The charge of the court involved in that case was not criticised or apparently attacked on the ground of expressing an opinion as to what constituted negligence. In *Simmons* v. *East Tenn., Va. & Ga. R. Co.*, 92 *Ga.* 658 (18 S. E. 999), it is said: "If by reason of the negligence of a railway company a collision of its trains becomes imminent, and an employee upon one of them, whose life is consequently exposed, is prompted by the conductor to run forward over intervening cars to give warning to the engineer, and in so doing, without imprudence or negligence on his own part, falls and is injured, the company is liable to compensate him in damages. In such case the negligence, whatever it may have been, which occasioned the perilous situation, is not

too remote, provided a collision of the company's trains was so imminent as to render the conduct of the employee necessary and proper under all the circumstances of the occasion; and whether it was so or not is a question of fact for the jury." In 1 Thompson on Negligence (2d ed.), §81, the principle is thus stated: "If the negligence of B. compels A. to adopt a particular course, which he would not have adopted but for such negligence, and, in so acting with ordinary prudence, A. is injured, he may recover damages of B." Where a passenger is put in imminent jeopardy by the negligence of the servants of a railroad company, and in attempting to escape injury he is damaged, in an action against the carrier he is not necessarily precluded from recovering, although he may have misjudged the danger. *Macon & Western R. Co.* v. *Winn,* 26 *Ga.* 250. Whether a passenger who was put in imminent peril acted rashly or recklessly in leaping from a car, or whether he should have remained upon it, or have sought to leave it in some other manner, are questions for the jury. In determining whether he acted rashly or recklessly, and thus brought upon himself an injury which he might have avoided by more discreet conduct, the jury may consider the excitement and state of the emotions of the passenger produced by the peril in which he has been placed by the carrier. In *Smith* v. *Wrightsville & Tennille R. Co.,* 83 *Ga.* 671, 673 (10 S. E. 361), it was said that "All the authorities concur in holding that the duty of a person for his own safety, in such an emergency, is not to be measured by the ordinary standard, but that allowance is to be made for the state of his emotions. The authorities to this effect which might be cited amount to scores, if not hundreds." See also *Atlanta, Knoxville & Northern Ry. Co.* v. *Roberts,* 116 *Ga.* 505, 507 (42 S. E. 753).

8. None of the other grounds require extended discussion. One of them complained that the court, in stating the allegations of the plaintiff's petition, informed the jury that it was alleged that the metal parts of the controller were bent out of position. It was in fact so alleged; and while the defendant introduced evidence tending to show that the controller was in good condition, we can not say, under the pleadings and evidence, that this charge requires a new trial. In three instances error was assigned on fractional parts of sentences, omitting words therein, and supplying their places with asterisks. It may be doubted whether these assignments of

error were sufficient; but as the case must be tried again, and the same question will doubtless arise, we will refer briefly to the subject dealt with in them. The plaintiff alleged that the curve beyond the point where her husband left the car was in bad condition, or improperly constructed. The only evidence offered by her on that subject was that of an expert, whose testimony, taken altogether, did not show improper construction of the curve, in view of the fact that it was a part of a street-car track in a public street, and had to be adjusted to the surface of the highway. There was no evidence that the plaintiff's husband knew of any danger or defect in the curve, if there was any, so as to connect it with his leaping from the car. The presiding judge, on another trial, should the evidence be substantially the same as that presented on the former trial, can eliminate any erroneous instruction on this subject. The other grounds require no special mention. For the reasons indicated a new trial must be granted.

*Judgment reversed. All the Justices concur.*