### 4905. CHARLESTON & WESTERN CAROLINA RAILROAD COMPANY *v.* BROWN.

1. This was an action against a railway company under the Federal "employer's liability act," to recover damages for personal injuries. The case made by the petition was substantially as follows: The plaintiff was a locomotive fireman on the defendant's train, which operated daily between Georgia and South Carolina. At a point in South Caro-

lina the track was being repaired, and when the train upon which the plaintiff was employed approached, one of the track-flagmen grabbed a flag of distress and in an excited manner ran up the track of the railroad, met the train, and signaled it to stop; thereupon the engineer, after putting on the emergency brakes, jumped from the engine, and the plaintiff, seeing that the rails of the track ahead of the engine were out of line and "buckled," and believing that the train would be wrecked and his life be in peril, jumped from the engine, and in doing so sustained serious injury. It is alleged that the defendant was negligent in suffering its roadbed to get out of order and its rails to become "buckled," and in not placing a danger flag at a sufficient distance on its line from the place ·where the track was out of order, after the "buckled" condition of the track had been discovered, to have notified the employees on the engine of the danger, and thus have prevented the application of the emergency brakes and the apparent necessity for the plaintiff to jump from the engine. *Held,* that the petition was not subject to general demurrer, nor to demurrer upon the ground that the negligence complained of was not the proximate cause of the injury; nor was it essential to allege that the train actually ran off the track. The plaintiff did not complain of injuries sustained by reason of a derailment, but complained of injuries resulting from his fall in consequence of the jump made necessary by an emergency brought about by the defendant.

2. The allegations of the petition showed that the plaintiff was engaged in interstate commerce, and the suit was properly brought under the Federal "employer's liability act." Under this act it is not essential for the plaintiff to show that he was free from fault. He was entitled to recover for the negligence of the defendant; and his own fault, if any, would not defeat the action, but would merely go in reduction of the damages.

3. The exception to the admissibility of documentary evidence, as set forth in the 8th ground of the motion for a new trial, can not be considered, because the document to which exception is taken is not set forth in the motion for a new trial, either literally or in substance, and no copy of it is attached thereto as an exhibit.

4. While, under the Federal "employer's liability act," there is no presumption of negligence against the railway company in a case of this character, yet failure of the judge in the present case to charge the jury that there is no such presumption is no cause for a new trial.

5. The evidence authorized the verdict, which was not legally excessive, and the questions as to whether the plaintiff's injuries resulted from his own negligence, or from that of the defendant, was fairly submitted to the jury, and there was sufficient evidence to support their finding in the plaintiff's favor.

6. No material error of law was committed, and the judgment overruling the motion for a new trial will not be disturbed.

DECIDED OCTOBER 31, 1913.

Action for damages; from city court of Richmond county—Judge W. F. Eve. April 21, 1913.

*W. K. Miller,* for plaintiff in error. *H. C. Roney,* contra.

RUSSELL, J.  Brown brought an action for damages, alleging that he was injured while employed as a fireman by the defendant, who was alleged to be a carrier engaged in interstate commerce.  He expressly planted his case upon the Federal "employer's liability act" of 1908, which provides that such a carrier shall be liable in damages to any person suffering injury while employed by the carrier in such commerce, resulting in whole or in part from the negligence of any of the officers, agents, or employees of the carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.  Of course, in such a case the burden of proving that the negligence of the employer was the proximate cause of the injury rests upon the plaintiff (*Brown* v. *Southern Railway Co.*, 10 *Ga. App.* 367, 73 S. E. 677), and the doctrine that the servant assumes the risks ordinarily incident to his employment applies where the action to recover damages for personal injuries is based upon that statute (under the same circumstances and conditions), just as it would apply if the action were proceeding under the statutes of this State.

The plaintiff's petition alleged that he was a locomotive fireman on a passenger-train of the defendant, which ran daily from Augusta, Georgia, into the State of South Carolina, and returned to Augusta.  On the occasion under investigation the train upon which the plaintiff was a fireman left Spartanburg, South Carolina, at 12.30 p. m., for Augusta, and on the return trip reached Woodruff, South Carolina, and had passed that station a mile or two when the casualty which resulted in the plaintiff's injury occurred. The petition alleges, that track-hands were working on the line of the railroad, and that as the train approached and was within a short distance from where they were working, one of the track workmen grabbed a flag of distress in a very excited manner and ran up the railroad, meeting the train and signaling the train to stop, and that thereupon the engineer, after putting on the emergency brakes, jumped from his engine, and the plaintiff, seeing that the rails of the track ahead of the engine were out of line and "buckled," and that apparently the train would be wrecked, and believing his life to be in peril, also jumped from the engine, and in jumping lost his footing and fell; and the fall broke the bones of his right rip, his collar bone and two ribs.  It is averred that the

defendant was negligent in suffering its roadbed to get out of order and its rails to become "buckled," and in not placing a danger flag at a sufficient distance on its line from the place where the track was out of order, after this condition was discovered, to have notified the crew of the passenger-train of the danger, and thus have prevented the necessity for applying the emergency brakes, and prevented the plaintiff's injury. The defendant demurred to the petition, the demurrer was overruled, and upon the trial the jury returned a verdict for the plaintiff. Exception was taken pendente lite to the judgment overruling the demurrer, and this exception, as well as that to the judgment overruling the motion for a new trial, is presented for our consideration by the bill of exceptions.

1. We find no error in the judgment overruling the demurrer. The petition was certainly sufficient to withstand the ground of the demurrer in which it was insisted that the petition failed to set out a cause of action; nor could the ground in which it was insisted that the negligence complained of was not the proximate cause of the injury be sustained, for, if the allegations of the petition were proved, the jury might be authorized to infer that the negligence of the defendant was the prime underlying cause of the injury suffered by the plaintiff, and that, though he might have been negligent in some respects, he would not have jumped or have been hurt but for the concurrent negligence of the servants of the company. Nor was it necessary for the plaintiff to allege that the train ran off the track. His case was not one of a person complaining that he was injured by reason of a derailment. The petition plainly alleged that the plaintiff was injured in jumping from the engine, and by reason of the fall consequent upon the jump. Therefore it is immaterial, so far as concerns his right to recover, whether the train remained upon the track or was derailed. The petitioner alleged sufficient facts to authorize submitting to the jury the question whether he was justifiable in jumping from the engine at a time when, as it appeared to him, his life was in peril; for it must be borne in mind that one who is called to act in an emergency must necessarily be governed by the surroundings as they appear to him; and that, though he must use ordinary care for his preservation, the determination of the question whether he did or did not use ordinary care is to be reached by a consideration

of the aspect the circumstances of the emergency presented to him, and not the true condition as it may have appeared to bystanders, who perhaps may have had better opportunity of ascertaining the facts.

2. We think the facts alleged clearly brought the case under the Federal "employer's liability act," and that the 7th ground of the demurrer (which, though applicable only to the 7th paragraph of the petition, was general in its nature) was properly overruled. Under the allegations of the petition the defendant was engaged in interstate commerce; the plaintiff was employed by it on an interstate run; he had suffered an injury; and even if this injury was partly due to his own negligence, if the injury also resulted in part from the negligence of an employee of the carrier, he was entitled to recover. He was not required to show that he was free from fault (as the employee who proceeds for damages under the statutes of this State must do), if he succeeded in proving that it was negligence to give the signal to stop the train, and that his injury resulted primarily from this negligence of one of the carrier's employees.

3. In one of the grounds of the motion for a new trial complaint is made that the plaintiff was allowed to introduce a letter from the defendant's engineer to the master mechanic of the railroad company. It is assigned as error that the engineer was a witness under subpœna of the plaintiff, and therefore his reason for jumping from the engine should have been given by himself as a witness; and further, that his letter could not operate as an admission by the defendant company, nor bind it as such; and the cases of *Carroll* v. *East Tennessee &c. Ry. Co.*, 82 *Ga.* 452 (10 S. E. 163, 6 L. R. A. 214), and *Howard* v. *Savannah &c. Ry. Co.*, 84 *Ga.* 711 (11 S. E. 452), are cited in support of this contention. The majority of the court decline to consider this ground of the motion for a new trial, because the document, to the admissibility of which objection was raised, is not set forth in the motion for a new trial, either literally or in substance, nor is a copy attached to the motion as an exhibit. The writer (not losing sight of the decisions of the Supreme Court which require documentary evidence to be exhibited in the motion for a new trial) is of the opinion that even if we should consider the exception, it is without merit. Moved by the argument of the learned counsel for the plaintiff in

error, I was under the impression that the paper in question was necessarily a letter, and its admissibility seemed to be doubtful because the paper refers partly to matters not connected with the plaintiff, and therefore foreign to the issue. After mature deliberation, however, it is my opinion that the trial judge did not err in overruling the specific objections made to the introduction of the paper, and it is plain that its admissions could not have harmed the defendant. It does not appear from the contents of the paper whether it was a letter, or a report such as is sometimes required by the rules of employers. The paper is equally susceptible of either construction. The addressee is addressed as "master mechanic," and there is no word which refers to anything other than the occurrence in which the plaintiff was injured; nor is there any statement acknowledging receipt of an inquiry or indicating that the paper is a letter in reply to one received by the writer. The trial judge could properly have held that the paper submitted for his inspection was a report by an employee to his superior; and even if this is not so, the engineer was in charge of the engine; he was, for the occasion, the alter ego of the defendant company, and some of the statements in the letter (if it was a letter) could be treated as admissions of the company itself, because made by its alter ego.

Of course, an agent's declarations, beyond the scope of his authority, or as to matters outside the scope of his duty, can not affect his principal; and, consequently, in *Wright* v. *Georgia Railroad Co.,* 34 *Ga.* 337, it is held that the statements of an agent should not go to the jury until it has been shown that his sayings relate to matters within the scope of his agency, but the principal is bound by statements made by him as to matters which are peculiarly within the province of his agency. Under the rulings in *Imboden* v. *Etowah & Battle Branch Mining Co.,* 70 *Ga.* 87 (11), 113, *Edwards* v. *Cotton States Life Insurance Co.,* 74 *Ga.* 222, *Dobbins* v. *Pyrolusite Manganese Co.,* 75 *Ga.* 450, *Georgia Railroad Co.* v. *Smith,* 76 *Ga.* 634, *Krogg* v. *Atlanta & West Point Railroad Co.,* 77 *Ga.* 202 (4 Am. St. R. 77), as well as in many subsequent cases, such admissions of Hargrove, the engineer, as related to matters within the scope of his duty as engineer were admissible whether the communication to the master mechanic be treated as a formal report or as correspondence personal in its nature. As was

said by Chief Justice Jackson in the *Imboden* case, supra: "A corporation can only make admissions through its agents, and the admissions of such agents, acting within the scope of their powers and about the business of their agency, are admissible." "Unless such admissions are binding on a corporation, it can not be bound by admissions at all. The only way in which a corporation can talk and admit is by agents. It is dumb as well as deaf by itself, having no organs of speech or hearing except by natural persons as its agents." Hargrove was the engineer in charge of the particular engine, in jumping from which the plaintiff was hurt. It was his duty to operate the engine and control its movements, and as to that engine he was the alter ego of the carrier. For this reason it would seem plain that so much of his communication to the master mechanic as relates to the particular facts touching the operation of the engine at the very time the plaintiff was hurt was relevant testimony; and even though the communication contains some irrelevant matter, the admission of the whole paper was not erroneous, for the objection was not aimed at these particular portions of the paper, but was directed to it as a whole.

The requirement that admissions of an agent which bind his principal must be made dum fervet opus is complied with in a case in which the admission is made at a time so far subsequent to the transaction to which the statement relates that it can not be said to be a part of the res gestæ, if the statement is as to matters peculiarly within the very class of work entrusted to this agent, and especially if it is the business of this agent solely and does not relate to the acts or duties of any one else than himself. For this reason, as to so much of the statement of Hargrove as related to what he himself did in applying the emergency brakes and stopping the train, it is immaterial that the statement was made several days after the casualty in which the plaintiff was alleged to have been injured. As was held in *Chattanooga &c. R. Co.* v. *Liddell*, 85 *Ga.* 490 (11 S. E. 853, 21 Am. St. R. 169), the sayings of an agent are admissible only upon the principle that they are a part of the res gestæ; but in *Evans* v. *Atlanta & West Point R. Co.*, 56 *Ga.* 500, it is pointed out that statements made in the line of the agent's duty are to be classed, as to the particular transaction involved, as part of the res gestæ. I am of the opinion, therefore, that so much of the engineer's report to the master mechanic as

relates to facts as to which it was his duty to report was properly admissible.

4.   Exception is taken to the fact that the trial judge did not instruct the jury that under the Federal "employer's liability act" there is no presumption against the railway company.   The court did not charge upon this subject at all, and the request to charge was merely oral.   The real question presented, therefore, is whether it was the duty of the court to point out to the jury the distinction or difference between the Federal statute and the laws of this State, due to the fact that there is a presumption of negligence against the company where it is sought to recover damages under the laws of this State, but no such presumption where the right to recover is based upon the Federal statute.   We do not think that the judge, in the absence of an appropriate written request, is in any case required to charge the jury as to what is *not* the law; his duty is fulfilled if he tells the jury what is the law applicable to the case.   In the present case, in telling the jury that the plaintiff was required to prove all the allegations of negligence set forth in the petition, or that otherwise the jury should find for the defendant, the judge certainly conveyed no intimation that there was a presumption of negligence against the company; and in order to hold that further instructions were necessary, it would have to be assumed that there was some good reason why the jury should have thought that there was a presumption, before it would appear that a jury of ordinary intelligence would have such an impression.   The judge several times told the jury that the action was based on the Federal "employer's liability act."

5.   The plaintiff proved his case as laid.   The evidence was sufficient to authorize the jury to find that the fireman was impelled by the aspect of his surroundings, as they appeared to him, to jump from the engine for the preservation of his own safety.   It was not necessary that the train should have run off the track; since, if he waited for derailment of the train before jumping, he might be injured before he could jump, or might, by the overturning of the engine, be prevented from jumping at all.   It was for the jury to say what emotions of apprehension might naturally and reasonably be aroused in the mind of the plaintiff; and the plaintiff was authorized to act in accordance with the conditions as they appeared to him, not as they might have appeared to a bystander.   "All the

authorities concur in holding that the duty of the person for his own safety, in such an emergency, is not to be measured by the ordinary standard, but that allowance is to be made for the state of his emotions. The authorities to this effect which might be cited amount to scores, if not to hundreds." *Atlanta, Knoxville & Northern Ry. Co.* v. *Roberts,* 116 *Ga.* 508 (42 S. E. 753) ; *Georgia Railway & Electric Co.* v. *Gilleland,* 133 *Ga.* 621 (66 S. E. 944) ; *Smith* v. *Wrightsville & Tennille R. Co.,* 83 *Ga.* 671 (10 S. E. 361). As was said by us in ruling upon the demurrer, the fact that the engine was not derailed is of no consequence in determining whether the plaintiff was justified in jumping; for, as was held in *Southwestern Railroad Co.* v. *Paulk,* 24 *Ga.* 356 (5), 366, "If, through the default of the corporation or its servants, the passen- ger is placed in such a perilous condition as to render it an act of reasonable precaution, for the purpose of self-preservation, to leap from the cars, the company is responsible for the injury he receives thereby, although if he had remained in the cars he would not have been injured." And the case of an employee can not differ from that of a passenger, if the employee is free from all fault as to the matters which caused his peril.

It is strenuously insisted by learned counsel for the plaintiff in error that the buckling of the track was due to natural causes, and that, since the section force had an hour for dinner, they did not, after returning, have sufficient time to pull the track in line or to find out that they could not do so before the arrival of the train. Even if we concede all that is claimed in behalf of the plaintiff in error upon this point, the fact remains that the jury were authorized to find that the signal upon which the train was stopped was not properly given, nor given at the proper place, as well as that it was not given as soon as it should have been. Furthermore, even if the buckling of the track was due to natural causes, the circumstances as detailed by the plaintiff, if his testimony was credible, authorized him to infer that one of the rails had been taken up in order to cut it off, and that if he remained upon the engine until the gap in the track was reached, the engine would be overturned.

6. Without discussing at length other assignments of error, whose review would be profitless either to the parties or to the profession, we are content to express the opinion that no material error of law was committed. There was sufficient evidence to

authorize the verdict, which was approved by the trial judge upon review, and the judgment overruling the motion for a new trial will not be disturbed.                                      *Judgment affirmed.*