*Charlton M. Theus, Anderson, Cann & Cann,* for plaintiff.
*Paul E. Seabrook,* for defendant.

21094, 21105   GEORGIA POWER CO. *v.* BELL; and *vice versa.*

DECIDED JULY 14, 1931.

*Colquitt, Parker, Troutman & Arkwright, Hugh Burgess,* for plaintiff in error.

*Harwell, Fairman & Barrett,* contra.

LUKE, J. Mrs. Mary G. Bell brought suit against the Georgia Power Company for the homicide of her son, John Bell Jr. The petition alleged, in substance, that about 175 yards northeast of the county line between Fulton and DeKalb counties the defendant had a main-line track and a passing or switch track connected with the main-line track; that the main-line track was about the center of the road and the passing track about two feet from the east curb line; that the roadway within and by the side of the passing track had not been repaired, and the rail and some of the cross-ties were exposed and had been in this condition for 12 or 14 years; that her son, with one Howard Bosworth, was traveling in a northerly direction away from Atlanta at night, in an automobile, and that because of this condition of the defendant company's track the automobile was thrown off the road and crashed into a pole of the defendant company, killing both occupants of the automobile; and that her son was the guest of Bosworth who was driving the car.

There was evidence to show that "The south rail of the passing track as it curves into the main track . . is six or eight inches higher than what would be the street," and that "the entire cross-ties from the track out were exposed from the track to the end of the cross-ties," and that immediately to the south side of the south rail of said passing track there was a ditch "at least eighteen inches deep," and there was a slope from the south rail to this ditch; that there was no red light or warning of any kind to notify a traveler at night of this condition of the defendant company's track; that the automobile in which the petitioner's son was riding struck this rough track, tried to "mount the rail," was thrown off the road into the ditch, and grazed a pole of the defendant company on the side of the track; that the driver then tried to steer the car back into the road, and struck another pole of the defendant company about 130 feet from the first pole, which resulted in the death of petitioner's son and his companion; that petitioner's son was the guest of the driver of the car, and they were traveling on the right

side of the road. The jury returned a verdict for the plaintiff, the defendant made a motion for a new trial, which was overruled; and on this ruling the defendant assigns error.

It is admitted that the Georgia Railway and Power Company contracted with DeKalb County relative to laying a track on the road in question, and the plaintiff in error contends that said company was acquired by the defendant, Georgia Power Company, under code-sections 2607, 2608, and 2609. Code-section 2609 provides in part that "such purchasing or consolidated corporation shall be possessed of all the rights, privileges, powers, and franchises, as well of a public as of a private nature, and be subject to all the duties and liabilities, debts and obligations of each of the corporations participating in such agreement."

■ The first contention of the plaintiff in error in arguing the general grounds of its motion for a new trial is that under the franchise and contract with the authorities of DeKalb County, by virtue of which the track was constructed, the Georgia Railway and Power Company and its successor, the Georgia Power Company, were relieved from any duty of paving or repairing said street or road. The defendant company introduced this contract in writing, which provided that in consideration of certain payments to DeKalb County, the Georgia Railway and Power Company was relieved of doing certain paving and repairing. In this connection attention is called to the fact that the plaintiff requested the court to charge the jury that "as to the public who travel said road, and as to any person who might be injured or damaged by the failure of the street-railway company to keep said roadway in repair between its rails and to the ends of its cross-ties laid in said road, the said county did not have the legal right to exempt or relieve the street-railway company from the duty imposed by law upon it of keeping in repair and reasonably safe for travel the space between its rails and to the ends of its cross-ties laid in said road." The refusal to give this charge constitutes a ground of exceptions pendente lite upon which error is assigned in the cross-bill of exceptions. Under our view of the case it is not necessary to pass upon the exceptions pendente lite of the plaintiff, and we do not do so; but we quote this charge because it gives an insight into the main contentions of the plaintiff which we hold to be meritorious. It presents the question of whether a county can by contract authorize a street-railway

company to maintain a dangerous instrumentality that endangers the lives of the public; whether such a contract would, to that extent, be void as against public policy. Since a county is not liable to suit for any cause of action unless made so by statute, can it relieve a street-railway company from liability because of a dangerous track, and thus deprive the one injured thereby of any recourse either from the county or the street-railway company? Would such a contract, relieving the street-railway company from repairing its roadbed, be an ultra vires act on the part of the county, in that it would be an abdication by the county of its governmental powers or an attempt to trade away the powers invested in it by law? These questions are not decided, because to decide them is not necessary for the determination of this case, but they are presented because they throw light on the merits of the issues involved.

While the contract of the county with the street-railway company provides that the company shall be relieved from certain paving and repairing, and under this provision the company claims non-liability in the instant case, the contract contains also the following provision, under which the plaintiff claims that the company is not relieved, to wit: "That as to that part of the track from the county line northward which will be constructed in the paved roadway of the Peachtree road until it reaches the side of the road said Georgia Railway and Power Company shall in constructing its said track replace the pavement in good condition, and will thereafter repair any damage caused by its track construction and the operation of its cars thereover on notice from the commissioner of roads and revenues to repair the said paving." There was evidence that this provision of the contract was not complied with by the defendant company, and, therefore, the defendant was not relieved from liability either by common law or by the contract. It will be noted that the obligation to repair under this provision was "from the county line northward," and the evidence showed that the injury occurred just north of the county line and within the territory included in this provision of the contract. While the company necessarily had notice of the condition of the road at this point, there was evidence that the Commissioner of DeKalb County actually gave such notice. R. J. Freeman swore that he was commissioner in 1917 and 1919;

that "after they had put the track in there as to replacing of the pavement, I called their attention to the condition they had left it in after they put the track in. . . I called their attention to it several times. . . That was while I was commissioner; at that time I called their attention to it, at the time I talked to Mr. Smith, their engineer, about it. This franchise was granted during 1917."

■ The second contention of the plaintiff in error on the general grounds of the motion is that defendant's failure to pave or repair was not the proximate cause of the death of the plaintiff's son. The defendant contends that the cause of the death of petitioner's son was not the running off the highway, but was the running into the post after the car left the highway. It is the province of the jury to determine what is the proximate cause of the injury, and there was ample evidence to sustain their finding that the injury was caused by the condition of the defendant company's tracks. Very few injuries occur at the instant an automobile leaves the highway. The injury generally occurs after it leaves the highway and strikes something, a tree, a post, a rock, a bank, or the bottom of a ditch. It could not have struck the post had it not left the highway, and the condition of the track caused it to leave the highway. Under the evidence of one witness the automobile in which the petitioner's son was traveling may or may not have been exceeding the speed limit allowed on a country road, but no witness swore that it was actually exceeding the speed limit. The evidence showed that these boys were going in a northerly direction, on the right-hand side of the road where they belonged; that the light of a street-car was in the driver's eyes, which partially blinded him (though the cause of action is not based on that feature, since the motorman exercised all due precaution) ; that the automobile struck this passing track, which had its rails extended several inches above the surface of the road and its cross-ties exposed; that the automobile tried to "mount the rail," was thrown out of the road, grazed one post of the defendant company, ran against another post, and killed the occupants. That the driver attempted to steer the car back into the road was shown by the tracks of the car, but the distance from the first post to the second post was only about 132 feet, and a car running at the lawful rate of 40 miles an hour on a country road would take only a few seconds to traverse this short distance,

which did not give the driver time to steer it back, more particularly so because of the rough ground which he was traversing at that time.

The third contention of the plaintiff in error on the general grounds of the motion, that "plaintiff did not prove her case as alleged," is without merit.

■ Special grounds 1 and 4 of the motion for a new trial complain that the court erred in failing to charge the jury in substance that if the driver of the car ran into the post and this caused the injury, they should find for the defendant. There is no merit in this contention. Since it is undisputed that the car did run into the post, resulting in the death of the petitioner's son, such a charge would have been equivalent to directing a verdict for the defendant. Furthermore, such charge would have taken from the jury the right to determine the proximate cause of the injury,— whether it was the condition of defendant's track which caused them to leave the highway, or whether it was the striking of the post after they left the highway. The jury could very reasonably conclude that it was perfectly natural for the driver of the automobile to attempt to steer the car back to the highway, and that he did not have time or opportunity, in the dark and on the rough ground, to ascertain the location of the post into which he ran. The condition of the defendant's track brought about the emergency. "Persons confronted by a dangerous situation, or by an emergency or other circumstances likely to impair judgment and ordinary discretion, are not held to the same quantum of care as they would be otherwise." *Pacelli* v. *Central of Ga. Ry. Co.,* 6 *Ga. App.* 97 (2) (64 S. E. 302). "It has been frequently held by the Supreme Court of this State, and can not reasonably be denied, that if one, by his negligent or wrongful act, causes an emergency wherein another apprehends a danger from the consequences of such negligent or wrongful act, and does an act to avoid the consequences [such as might be lack of ordinary care under *ordinary* circumstances], this does not constitute contributory negligence which can be set up by the party whose conduct caused the emergency." *Dabbs* v. *Rome Railway Co.,* 8 *Ga. App.* 350 (69 S. E. 38). See *Georgia Railway &c. Co.* v. *Gilleland,* 133 *Ga.* 621 (66 S. E. 944).

■ Special grounds 2, 3, and 5 complain of the court's failure to charge certain contentions of the defendant relative to imputable

negligence where one is riding as a guest. There was ample evidence from which the jury could conclude that Bosworth was driving the car and petitioner's son was a guest. Mrs. Bosworth testified: "My son Howard went to ride in that car that night. Howard had been driving that car himself. He was helping me buy the car. In fact no one had driven it except himself during the time since we bought the car. . . He was the only one that was driving the car." The court charged the jury that "negligence by the driver of a private vehicle, contributing to the injury of the person riding therein by invitation, is not imputable to the injured person, unless it is made to appear that the injured person owned the vehicle or had some agency or concern in its operation, such as that the driver was his servant or agent, or that the two were at the time engaged in a joint enterprise for their common benefit, or unless he otherwise had some right or was under some duty to control or influence the driver's conduct." This is a correct statement of the law. See *Mayor &c. of Savannah* v. *Waters,* 27 *Ga. App.* 813 (109 S. E. 918). The court charged also that "Before the plaintiff would be entitled to recover in the case, the evidence must show you that the deceased was in the exercise of ordinary care, and that the defective tracks, if any, as alleged in her petition, was the proximate cause of the deceased's death. . . If, under the evidence, you do not believe the street-car rails or street-car cross-ties and condition of the highway between the cross-ties precipitated the automobile into the ditch and into the pole where the injuries occurred, you should find for the defendant, and this would be irrespective of who was driving the automobile at the time of the alleged occurrence." The judge sufficiently and correctly charged the law relative to imputable negligence.

■ The excerpts from the charge complained of in special grounds 6 and 7 were harmless to the defendant. These instructions merely left it to the jury to determine whether the contract had been complied with. True, the evidence that the defendant had paid DeKalb County $10,000 under this contract was uncontradicted; but since there was no admission by the plaintiff that the defendant company had paid this $10,000, and since the contract between the defendant company and DeKalb County does not provide for the payment of the specific sum of $10,000, and in view of section 4863 of the Civil Code (1910), prohibiting an ex-

pression of opinion by the trial judge as to what has been proved, and since, under our view of the case, the defendant would not have been relieved from liability because of a defective track at this point whether the $10,000 had or had not been paid, we hold that it was not reversible error for the court to submit to the jury the question of fact as to whether this sum had been paid.

The evidence authorized the verdict, and the court did not err in overruling the motion for a new trial.

*Judgment on main bill of exceptions affirmed; cross-bill dismissed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*