ELIZABETH COWART, plaintiff in error, *vs.* LEONARD PAGE, defendant in error.

| 59 | 235 |
| 122 | 784 |

1. If service of bill of exceptions is not otherwise too late, it will not be held to be so because the acknowledgment bears date on the same day as the clerk's entry of filing; especially, where not only service, but "due and legal service," is acknowledged. An erased date in the clerk's entry will not be regarded, if another date has been substituted by him which can be distinctly read.

2. Where, because of the judge's death after the bill of exceptions was delivered to him, and before he certified it, the authentication of the bill is by counsel and another member of the bar, under section 4255 of the Code, the date of the death need not appear, full diligence being shown to complete the authentication as soon as practicable, and the case having reached this court in time for the term to which it would have been returnable had the authentication been by the judge himself.

3. When there are interlineations in the bill of exceptions, and also in one of the affidavits of authentication, an addition to the interlined affidavit, subsequent in date to the original, to the effect that the interlineations were sworn to, without stating what interlineations, will be construed as referring to the interlineations in the affidavit, and not to those in the bill of exceptions. Those in the bill of exceptions will be treated as made (nothing to the contrary appearing) before any affidavit of authentication was sworn to.

4. When homestead was applied for expressly under the act of October 3, 1868, and the applicant, a woman, described herself as the head of a family, and the homestead was laid off, approved and recorded, the proceeding was not void because the kind of family, whether one of minor children or otherwise, was not disclosed. The presumption is, that the family was such as the act cited in the application makes provision for.

Practice in the Supreme Court. Service. Bill of exceptions. Presumptions. Homestead. Before Judge Clark. Sumter Superior Court. April term, 1877.

. Reported in the opinion.

JOHN R. WORRILL, by brief, for plaintiff in error.

B. P. HOLLIS, for defendant.

BLECKLEY, Judge.

1. Even if, as was suggested, but not decided, in *Bradley vs. Saddler*, 57 *Ga.*, 191, service of the bill of exceptions might be irregular if delayed until after the bill of exceptions had been filed in the clerk's office, yet, where counsel for defendant in error has acknowledged " due and legal service," and the acknowledgement bears date on the same day as the clerk's entry of filing, the service ought to be presumed to be what the acknowledgement declares it, that is, " due and, legal." In the present case, these conditions exist; the entry of filing and the acknowledgement of service both bear date, July 19, 1877, and the service is acknowledged to be " due and legal." It was said that the date in the clerk's entry, if not the 17th of July, as first written, is erased, and that if that be so the entry is now wholly without date. On inspection, we find, following the erasure, a distinct and perfectly legible date, corresponding with that annexed to the acknowledgement of service. The motion made by counsel to dismiss the writ of error for defective service, is, therefore, not well founded.

2. Another ground of motion to dismiss is to be considered. The presiding judge died before certifying the bill of exceptions, but the date of his death does not appear. What does appear from the affidavit of the attorney of the plaintiff in error, which affidavit, in connection with another by a disinterested member of the bar, is the means whereby the bill of exceptions is authenticated, (see Code, section 4255), is as follows: That the bill of exceptions is true, and contains all the evidence material to a clear understanding of the errors complained of; that the bill of exceptions was delivered to the judge on the 15th of June, 1877;

that the court adjourned on the 19th of June; that the bill of exceptions was not returned to the plaintiff in error or his counsel until after the judge's death, and that since the death the counsel had used all possible diligence to have the bill properly verified, but not until the day on which the affidavit was made, (the 12th of July could he find any person who could recollect the case sufficiently to join in the verification. The trial, according to a statement in the bill of exceptions, took place on the 20th of April, 1877. It was thus less than sixty days from the trial, to the time when the bill was tendered to the judge, and the tender was four days before the adjournment of the court. The bill was, therefore, in the judge's hands in due time. Acts of 1875, p. 24. The judge died without having either certified or returned the bill of exceptions. Section 4255 of the Code declares that, "if the judge should die before certifying the same * * then the party may verify his bill of exceptions by his own oath, or that of his attorney, together with the oath of at least one disinterested member of the bar who was present at the trial; and such verification shall operate in the same manner as the certificate of the judge." Within what time after the death of the judge the verification here provided for is to be had, is nowhere prescribed. Upon general principles, there should be due diligence. The counsel deposes in his affidavit that he used all possible diligence, and nothing to the contrary appears. He completed the verification in about one month after the paper went into the judge's hands, and he caused his case to reach this court in time for the term to which it would have been returnable if the verification had been by the judge himself. No term was lost, and there was no delay that worked injury to the opposite party, or to the general interests of justice. This being so, we are of opinion that it is not indispensable to the retention of the case in court, that the time of the judge's death should be disclosed. The motion to dismiss, on this ground, is also overruled.

3. A third and final ground remains. The disinterested member of the bar made his affidavit on the 12th of July, the same day on which the counsel made his. On the 18th of July, the former added to his affidavit, before the same. magistrate who attested the original, these words : " Interlineations sworn to and subscribed before me." To this addition was annexed the signature of the affiant, and that of the magistrate. In the bill of exceptions are found several interlineations, none of them, however, material to the real matter to be decided in dealing with the errors assigned. In the original affidavit, which precedes the addition quoted, are interlined the words, " and contains all the evidence material to a clear understanding of the errors complained of." We think it is to the interlining of these words in the original affidavit that the addition is to be understood as referring. That is the more natural construction ; and hence it is not to be inferred that the bill of exceptions received any of its interlineations after it was sworn to by the counsel and by the disinterested attorney, on the 12th of July. Moreover, annexed to the. bill of exceptions is an entry signed by the counsel for defendant in error, dated July 3, which runs thus : " I agree that the foregoing bill of exceptions is true, and contains all the evidence had upon the trial of the case." It is not probable that the bill of exceptions was altered by interlineations or otherwise, after this entry was annexed to it and signed. And if it was not, the interlineations found in the original affidavit are not material, since they relate only to what is distinctly enough admitted in this entry—that is, the completeness of the evidence. On the. whole, we think we have before us the real case that was acted upon by the court below, and that the writ of error should be sustained, and the case heard on its merits.

4. The action was complaint for land, an abstract of title being annexed to the declaration. The chain of title noted in the abstract consisted of a grant from the state, followed by several successive deeds, carrying the title down to the plaintiff's deceased husband, and closing with an assignment

of homestead by the ordinary of the county, to the plaintiff and her minor children. In her declaration, she claimed title to the premises as the head of a family of minor children, the names of whom were set forth, and of whom she alleged herself to be the mother and natural guardian. They, as well as herself, bore the family name of her deceased husband. At the trial, after introducing the grant and all the deeds mentioned in the abstract, she offered in evidence the homestead papers, as recorded in the proper office, the same consisting of her application, dated September 25, 1869, the order of survey, dated the same day, the surveyor's return (with plat), dated October 4, 1869, and the final approval of the ordinary, dated November 1, 1869. The court, on objection by the opposite party, excluded the evidence, and a verdict was rendered in favor of the defendant. The objection to the evidence was, that the jurisdiction of the ordinary to set apart the homestead did not appear. This objection, as we learn from the argument, rested on the fact, that in the application for homestead, the plaintiff described herself as the head of a family, without alleging that her family consisted, in whole or in part, of minor children. It is true that the composition of her family does not appear in the application, or elsewhere in the homestead proceedings. But her application was made, expressly, under the homestead law of October 3, 1868, and she represented herself to be the head of a family. What sort of a family did she mean? Undoubtedly, some sort provided for by that act. The ordinary entertained her application, and approved the proceedings under it. Certainly, his action is *prima facie* legal; and if the family in whose behalf he allowed the homestead is not such a family as the law he administered applies to, the burden of proving this is upon those who assert it. The presence of minor children in a family is not essential to the homestead right. 41 *Ga.*, 153; 56 *Ib.*, 390. When it appears on the face of the application, with reasonable certainty, that the applicant is the head of a family, it is enough to give to the ordinary jurisdiction,

so far as that element of jurisdiction is concerned. *Idem,* 520. If, under the allegations in the declaration, and the description of the homestead link in the chain of title, as noted in the abstract, it was necessary for the plaintiff to prove, in this particular action, that her family consisted of minor children, that was no reason for excluding the homestead papers. The papers were a part of her title, and it does not appear that she was not ready, had they been admitted, to adduce such further evidence as was necessary to support her declaration. The exclusion of the papers was error, and this error broke down her case.

Judgment reversed.