Smith *v.* The Wrightsville & Tennille Railroad Co.

1. Where an employé of a railway, while engaged in the performance of duty in running a hand-car, was put in sudden apprehension of a dangerous collision with a locomotive approaching from an opposite direction, and the threatened collision was due alone to the negligence of the company, whether it was rash or reckless to leap from the car, or whether he should have remained upon it, or left it by means less hazardous than jumping, are questions not clear enough under the facts of the present case to justify the granting of a nonsuit. The allowance rightfully to be made for indiscreet conduct under excitement and alarm can better be determined by a jury than by the court.
2. To avoid dismissing a writ of error because it does not appear when the court adjourned or that the bill of exceptions was certified within thirty days thereafter, time will be allowed under section 4272(c) of the code to perfect the transcript by obtaining the proper certificate from the clerk as to the date of adjournment.
3. In the absence of any suggestion that alterations appearing in the bill of exceptions were made fraudulently or after the bill of exceptions was certified, they will generally be treated as having been made fairly and before the certificate was signed by the judge. Upon a suggestion of fraud, or that the erasures, interlineations, etc. are of later origin, this court will, from inspection of the documents, or from inspection and other proper evidence, decide the question.

November 18, 1889.

Railroads. Negligence. Nonsuit. Practice. Bill of exceptions. Before Judge Hines. Johnson superior court. March term, 1889.

Reported in the decision.

W. R. DALEY, J. H. POLHILL, J. M. STUBBS and HARRISON & PEEPLES, for plaintiff.

A. F. DALEY, for defendant.

BLECKLEY, Chief Justice.

The plaintiff was in the employment of the defendant as a "section-boss." He had control of a hand-car and of a company of workmen, a force of a dozen men. With himself and all the men on board, he was proceeding, in the line of his duty, upon the car to reach a certain station at which a regular train was to pass him. He was not out of time but was entitled to the track, and had he not been obstructed, could have reached the station by the time the other train was to arrive there. His car was running rapidly by gravity or its own momentum down a descending grade, the speed being about fifteen or twenty miles an hour, which was not unusual under similar circumstances. He had no reason to anticipate being met by a locomotive, as, according to the schedules of the road, there was none due. But whilst upon the descending grade, he looked ahead and saw a locomotive approaching rapidly (twenty-five miles an hour) at the distance of about three hundred or three hundred and fifty yards, the same having just passed the point of a curve. It, as well as his own car, was running down-grade, and between them was an intervening trestle. The plaintiff immediately gave orders to his men to apply brakes, but instead of obeying, they commenced leaving the car. He repeated the order, but no one obeyed. They all got off except one man, and the plaintiff seeing this, undertook to get off himself. He attempted to jump obliquely forward so as to avoid alighting upon the track, but striking probably against some part of the car, his direction was changed, and he fell in front upon the track, was run over and seriously injured. His car had by this time approached to within about

one hundred yards of the trestle, and the locomotive was within perhaps thirty to seventy-five yards of it on the opposite side, both being in motion. No collision took place, and had the plaintiff remained upon the car, he would probably not have been injured. The car was about three feet high, and had he taken a seat on the side of it, he could easily have gotten off, but he was excited, alarmed and confused, and his position being near the front end, he attempted to save himself by jumping instead of by sitting down on the side and getting off in that way. The mode of applying brakes to the car was to introduce poles through holes made for the purpose, and then press the poles against the wheels. It required four men, one to each wheel. The court granted a nonsuit.

1. There can be no question that the company was negligent in running upon the track, to the use of which the plaintiff was entitled for the time being, a "wild" locomotive, or one of which he had no warning either by schedule or by any other form of notice. Thus the misconduct of the company in threatening the plaintiff with a collision may be taken as established. The open question is, whether the plaintiff, after discovering the danger, acted recklessly or rashly and thus brought upon himself a calamity which he might have avoided by more discreet conduct. All the authorities concur in holding that the duty of a person for his own safety, in such an emergency, is not to be measured by the ordinary standard, but that allowance is to be made for the state of his emotions. The authorities to this effect which might be cited amount to scores if not hundreds. Whit. Smith's Negl. 392 (notes); Beach Contr. Negl. §14; Whart. on Negl. §304; Patterson's Ry. Ac. Law, 62; 1 Shear. & Red. on Negl. §89; 2 Thomp. on Negl. 1092(§8), 1174(§20); Roll v. Northern,

etc., R. R., 15 Hun, 496, affirmed 80 N. Y. 647; Gumz *v.* Chicago, etc. Ry., 52 Wis. 672; *S. W. R. R.* v. *Paulk,* 24 *Ga.* 356; *Ga. R. R.* v. *Rhodes,* 56 *Ga.* 645; *Cen. R. R.* v. *Roach,* 64 *Ga.* 635; *Cen. R. R.* v. *Crosby,* 74 *Ga.* 738. In collision cases on railways, the emotional element is a powerful factor; it enters both into the question of liability and the measure of compensation. With as much truth as force and elegance, was it said by Stephens, J., in *Cooper* v. *Mullins,* 30 *Ga.* 152, " Surely there ought to be some compensation for the suffering endured. The pain from the wounds must have been great, and the dread of the approaching collision between the two engines, though brief, must have been terrible. Mental agony has been known to turn a head gray in a night, and gray hairs are often but the effervescence of some great mental anguish." Questions involving deep emotions, and conduct dependent thereon, are generally not mere questions of law, or such as can be disposed of by the logic of the bench. They can best be determined by practical jurors " on a view of all the facts and circumstances bearing on the issue." We do not decide that the plaintiff ought to recover, nor do we think that the court below should have decided that he ought not. " If the facts are clear and undisputed, and show that the plaintiff was guilty of contributory negligence, the judge may direct a nonsuit, because if that is clearly shown, the plaintiff has failed to prove his case, which is that the damage is caused by the negligence of the defendants, and therefore the question of contributory negligence does not arise; but if there is a question of fact and an issue of contributory negligence, or there are two reasonable but different views which may be taken, such questions must be left to the jury. Such questions are often very difficult for the jury to decide, and each case will depend upon its own peculiar facts,

and cannot be settled by any general rules." Whit. Smith Neg. The court erred in granting a nonsuit.

2. When this case was called for argument, counsel for the defendant moved to dismiss the writ of error on two grounds, the first of which was that it did not affirmatively appear that the bill of exceptions was signed by the judge within thirty days after the adjournment of the court at which the judgment complained of was rendered. It is usual for the bill of exceptions to state that it is tendered for signing within the requisite period after adjournment, but the language of this bill is that it was tendered within thirty days after the trial. It shows, also, that the trial must have taken place on or before the 25th of March, 1889, for the judgment of nonsuit was granted on that day. The certificate of the judge to the bill of exceptions bears date April 27th, 1889, which of course is later than thirty days after the trial. To meet this ground of the motion, the plaintiff produced a certificate of the clerk of the superior court to the effect that the March term, 1889, as appears from the minutes of the court, adjourned on the 30th day of March, and asked leave to have the record perfected by an order to the clerk to certify regularly the time of adjournment, citing section of the code 4272(c), which says, "No writ of error shall be dismissed in the Supreme Court of this State on any ground whatever which can be removed during the term of the court to which the said writ of error is returnable, and said Supreme Court shall give such time, during said term, even to the end of the same, as may be necessary to remove said ground, if it can be removed during the said term." Perhaps any certificate of the clerk as to the time of adjournment of the court is not strictly and technically a part of the record of each case, yet the time of adjournment as registered on the minutes is, in a broad sense, a part of the record of

every case disposed of at the term, and in sending up transcripts it has been usual for the clerk to certify this matter, either in verifying the transcript, or on the original bill of exceptions, and this certificate, when properly made, is to be or can be regarded. (See *Merritt* v. *Gill,* 59 *Ga.* 459.) Whenever it does not otherwise appear when the court adjourned, or whether the bill of exceptions was or was not signed within thirty days thereafter, the clerk's certificate as to the time, duly made, will supply the defect, and consequently the absence of such a certificate from the transcript of the record is a defect which in this case can be removed, for several months of the term of this court still remain within which to have it regularly obtained and sent up, and we are satisfied from the certificate of the clerk produced to us, that were we to call by order for a like certificate to be added to the transcript of the record, it could and would be furnished. This ground of the motion to dismiss the writ of error is therefore one which can be removed within section 4272(c) above quoted. The court, however, will not, without the consent of counsel for the defendant, consider this certificate, irregularly brought up, as a substitute for one hereafter to be obtained during the term, and the regular order of the court.

3. The second ground of the motion to dismiss was that the bill of exceptions appears to have been altered. It was admitted that one of the alterations was made by defendant's counsel, or with his consent. Another alteration was made by erasing three lines and a part of the next, and writing over it some new matter. This alteration was made by the judge, as he states in a note on the margin opposite the same, which note bears his signature. Another alteration, made in like manner upon the following page, occupies one line and a half, and the new matter is evidently in the hand-

writing of the judge, but no note of it is entered on the margin elsewhere. Counsel for the defendant declined to suggest, or state in his place, that any of the alterations were fraudulently made, and on carefully inspecting the document, we see no reason to suspect that the second, as well as the first, was not made by the judge himself at or before the time of signing the certificate. We think, therefore, it is to be presumed to be fair and honest. In *Cowart* v. *Page*, 59 *Ga.* 235, it was held that interlineations in bills of exceptions will be treated as made (nothing to the contrary appearing) before authentication. In that case, the judge having died, the bill was authenticated by affidavits. Some subsequent decisions tend to a more strict rule in regard to alterations, but none of them, as we think, restrain this court from deciding each case on its own merits, or from inspecting the bill of exceptions and determining from that, and other evidence, the *bona fides* and genuineness of the document as a whole. The case which comes nearest to the present one is *Poppell* v. *Thigpen*, 74 *Ga.* 412, the whole report of which is as follows : " Where a material part of the evidence set out in the bill of exceptions filed to the grant of a nonsuit, is erased, without any note thereof or statement that it was made by the judge or by counsel before signing ; and where the only assignment of error in the bill of exceptions shows on its face that it was written over something which had first been written and then erased, without any identification by the judge, there being one other interlineation which the judge certifies was made by him, the writ of error will be dismissed." There the assignment of error was written over something which had been erased. It does not appear in whose handwriting the new matter was. Had it been in that of the judge, the members of this court who then presided would doubtless have been satisfied of its *bona fides*. When

there is a want of mental satisfaction by this court as to the genuineness or purity of the whole bill of exceptions, the writ of error ought to be dismissed; but with such mental satisfaction, it would be illogical to dismiss for any interlineation or erasure. In *Clayton* v. *May*, 68 *Ga.* 27, measures were taken to ascertain whether the alterations were made by the judge, and the court being satisfied on the subject, and presuming that the judge made or ordered them, the case was retained. In *Masland* v. *Kemp*, 70 *Ga.* 786, the reference to certain necessary exhibits was obscurely interlined, and so blurred and blotted as to render it extremely difficult and uncertain, if not impossible, to make out the meaning of the reference. This was a part of the cause for dismissing the writ of error. In *Davis* v. *Bennett*, 72 *Ga.* 763, the obliteration broke the connection of sentences, destroyed the sense, and rendered it broken, if not altogether unintelligible. The writ of error was dismissed, but chiefly on another ground. In *Cottle* v. *Harrold*, *Id.* 831, it is said: "Material interlineations, additions or erasures, not made by the judge or certified to have been made before the bill of exceptions was certified, will authorize this court to dismiss the case." But the writ of error was retained. In *Johnson* v. *Johnson*, 80 *Ga.* 260, the judge below merely certified in general terms that alterations were made by him before signing. The certificate did not specify any particular alterations. There being no suggestion of fraud, the motion to dismiss was denied. The foregoing are all the cases of alteration appearing in the bill of exceptions which have been ruled up to this time, so far as we know. Two cases of altered or substituted entries of filing have been decided. In the first, *Darby* v. *Wesleyan F. C.*, 72 *Ga.* 212, the bill of exceptions had been filed, and was so marked by the

clerk before it was served. The outer leaf, upon which the entry of filing appeared, was removed, and another was substituted on which service was acknowledged and a new entry of filing written and signed. The first filing was treated here as the true one, and the writ of error was dismissed because the acknowledgment of service was obtained after that filing, the law at that time (as expounded by this court) requiring service to be made before filing. The next is *Wing* v. *Harris*, 75 *Ga.* 236. There the original entry of filing was scratched out, and after service the bill of exceptions was refiled. The writ of error was dismissed for the reason, as appears from the opinion of the court, that no copy of the pure paper, with official entries thereon, was or could be served; but the service must have been of something else than the original bill of exceptions with the official entries thereon. On the whole, however it may be as to entries of filing, we conclude that there is no rule or decision which prevents this court from entertaining an altered bill of exceptions, when the members of the court are mentally satisfied that none of the alterations were made after the bill was signed and certified by the judge. If it comes to us precisely in the condition that it left him, it is the true original bill of exceptions, and there is no reason why we should not entertain and treat it as such. This is putting a bill of exceptions on the footing upon which the general law (Code, §2852) places private writings. *Thrasher* v. *Anderson*, 45 *Ga.* 538. Prior to the code, in *Vickery* v. *Benson*, 26 *Ga.* 582, it was held that interlineations in an official certificate, made in the same ink and handwriting as the body of the document, would not vitiate, but that it would be presumed they were rightfully made.

The first ground of the motion to dismiss the writ of error having been removed by the consent of counsel

to dispense with any further certificate of the clerk as to the time of adjournment; and the second ground being insufficient, the motion is denied.

For error in granting a nonsuit,

*Judgment reversed.*