## BRYANT *v.* GEORGIA RAILWAY & POWER COMPANY.

1. Where one who is confronted by a sudden and dangerous situation, or emergency, while signaling a street-car to stop at a street corner, a regular stopping-place, on account of an automobile approaching directly towards him, or other circumstances likely to impair his judgment or discretion, such person can not be held as matter of law to be lacking in ordinary care. Whether such person, who, in such emergency and in order to avoid being struck by the automobile, jumps towards

Negligences, 29 Cyc. p. 523, n. 55.
Street Railroads, 36 Cyc. p. 1526, n. 95; p. 1622, n. 27.

the street-car and is injured thereby, is guilty of contributory negligence so as to defeat an action for damages, is a question of fact for the jury to determine.

2. At public street crossings, and regular stopping-places, the public have the right to expect that street-cars will be under control of the motorman.

3. The Court of Appeals put its ruling on the cases of *Briscoe* v. *Southern Ry. Co.*, 103 *Ga.* 224 (28 S. E. 638), and *Shroeder* v. *Ga. Ry. & El. Co.*, 142 *Ga.* 173 (82 S. E. 553). In those cases the emergency by which the party was injured was brought about by the voluntary action of that party, and not by some emergency brought about by an independent agency.

4. Under the pleadings and the evidence it was error for the Court of Appeals to affirm the judgment of the trial court in awarding a nonsuit.

No. 5187. JULY 14, 1926.

Certiorari; from Court of Appeals. 34 *Ga. App.* 488.

*W. E. Arnaud* and *J. K. Jordan,* for plaintiff.

*Colquitt & Conyers* and *Sidney Smith,* for defendant.

HILL, J. Nellie M. Bryant, as the widow of Henry E. Bryant, brought suit against the Georgia Railway & Power Company to recover damages for the tortious killing of her husband by the running of its street-car. The record shows that the husband of the plaintiff went to a street corner for the purpose of assisting two of his guests upon a street-car belonging to the defendant. While the three were standing upon the street corner the car passed on its outbound trip. They remained at the corner until the car went to the end of the line and returned. When the car was about two hundred feet from the corner where they were standing, and when the car had just come over the top of a hill which sloped the whole distance of two hundred feet down to where they were standing, plaintiff's husband went out into the street and signaled the street-car to stop at Chestnut Street, where they were standing, and which is the ordinary and necessary method of signaling defendant's cars to stop. The distance from the curbing to the first street-car rail is only about thirteen feet. While the petitioner's husband was standing at the usual place to signal the street-car to stop at the crossing, and in full view of the motorman in charge of defendant's car, an automobile driven by one Leonard Westbrook came over the hill ahead of the street-car. When plaintiff's husband saw the automobile he had no time to reach the sidewalk and it was necessary for him to step aside towards the

street-car track to let the automobile pass. Plaintiff's husband signaled with his hand and continued to signal the street-car to stop at its regular stopping-place. The street-car came, over the hill and down towards the crossing at Chestnut Street at a rapid speed, the motorman disregarding the signals to stop. The automobile came over the hill to the right of, and about twenty-five feet in front of the street-car, the latter gaining speed on the automobile and catching up with it. When the automobile passed the plaintiff's husband at the street crossing it was just ahead of the street-car and he had no time or opportunity to step back away from the street-car track before the street-car was upon him. Plaintiff's husband was struck by the street-car and killed. It is alleged in the petition that the defendant company was negligent in driving the street-car at the place of the accident, which is without the near fire limits of the City of Atlanta, at a higher rate of speed than twenty miles per hour, in violation of the ordinance of the city which provides that "vehicles and street-cars shall not be driven at a higher rate of speed than twelve miles per hour within the near fire limits, nor twenty miles per hour outside of such limits." It is alleged that the defendant company was negligent in running its street-car at a speed of not less than thirty miles per hour, in violation of an ordinance of the city which provides that "speed of vehicles and street-cars shall at all times be controlled by traffic conditions, and may be deemed reckless although within these limits (twelve miles per hour within the near fire limits and twenty miles per hour outside of such limits)." It is alleged that the defendant company was negligent in failing to stop on signal at the near side of Chestnut Street, in violation of an ordinance of the city which provides that "street-cars shall stop at near side of street corners only." The defendant denied some of the material allegations of the petition, and for want of information averred that it could neither admit nor deny other allegations. At the conclusion of the evidence the court granted a nonsuit, and to this judgment the plaintiff excepted. This case is here upon a petition for certiorari to the Court of Appeals, which affirmed the judgment of the trial court, in the following opinion: "Nellie M. Bryant brought her suit against Georgia Railway & Power Company, seeking to recover damages for the homicide of her husband. At the conclusion of the evidence a non-

33

suit was awarded. *Held:* Under no view of the evidence was the plaintiff's petition sustained. The court properly granted the nonsuit. See, in connection with the plaintiff's cause, *Briscoe* v. *So. Ry. Co.,* 103 *Ga.* 224 (28 S. E. 638) ; *Shroeder* v. *Georgia Ry. & Elec. Co.,* 142 *Ga.* 173 (82 S. E. 553), and cases cited."

The sole question to be determined is whether the Court of Appeals, in affirming the judgment of the trial court in awarding a nonsuit, committed error. Under the pleadings and evidence in the case we are of the opinion that the Court of Appeals erred in sustaining the judgment of the lower court in awarding a nonsuit, and that the case should have been submitted to the jury under proper instructions to determine from the evidence whether the plaintiff's husband was guilty of such negligence under the circumstances as would debar his widow from recovering for his homicide. There were several eye-witnesses to the killing of plaintiff's husband. One of them, Mary O'Neil, testified : "When the car was coming back from the end of the line Henry Bryant started to put them on the street-car. When Henry walked out into the street the street-car was about Doray Street, the next street west of Chestnut Street, a short block. As to whether Henry signaled the car—yes, just as the car was kinder coming down Doray Street he kinder did like that [indicating]. The corner of Chest nut and West Hunter is a regular stopping-place for street-cars. He signaled the car as it was on Doray Street. He was standing about three feet from the nearest rail of the street-car track. I was standing near the curbstone, and the visitors were standing out there, a little behind Henry. The street-car projects over the rail about a foot. I saw the automobile truck about that time coming on just a little ahead of the street-car—about an automobile length ahead of the street-car. The automobile was about three feet from the curb; it was running up kinder close to the curb, might not have been three feet; but it was running nearer the curb than it was the street-car track. After the automobile truck got down from where the women were standing, why it kinder looked like it was going to run up into them, then they had to jump out of the way of it a little. The automobile kinder pulled over that way toward the car-track. The women jumped back out of the way. As to whether or not that automobile turned, it was turned towards Henry Bryant—you see he was standing over on that side

when this car kinder—to keep from hitting the women then it had to went kinder towards him. Then he got over near the track—on the track. By that time he was hit and knocked down by the street-car. At the time he stepped over out of the way of the automobile on to the track the street-car was right up to him. Just about the time that he got out of the way of one thing the street-car was coming along, and he just got hit so quick I just don't know how far it was; it didn't look to [me] that it was so far. I would say about the time he stepped away that the car was not more than about three feet from him at the time he stepped out. I don't know how fast that street-car was going as it approached Chestnut Street. I don't know how many miles it was running, but it was running pretty fast. It did not slow up. There was nothing to prevent the motorman from seeing Henry Bryant from the time he signaled the car as it came from Doray Street. There was not anything out there between Henry and the motorman. The car was going fast. About as fast as they generally go along there, in a hurry. I won't undertake to say how many miles an hour. The car did not slow up at all as it approached Chestnut Street. That street-car is accustomed to stop to take on passengers at that crossing. With respect to the stopping-place, Henry Bryant was standing where he usually stands, where the car—where he is supposed to stand."

Another witness, Necie Wyatt, testified: "The truck was just a little ahead of the street-car. Some people were out waiting in the street, standing at Chestnut and West Hunter Street. This automobile kinder turned from these people and turned towards this man, and he steps out too far and the street-car knocked him down and run over him." Georgia Haynes testified in part as follows: "I went down to the car line at the corner of Chestnut and another street on which there is a car line. We stood there waiting for the street-car. . . Bryant, plaintiff's husband, went out to wave it down. I saw the top of the street-car coming over the hill; it was coming so fast he went out to wave the car, which was lighted, down. The street-car didn't stop at that cross street; it kept right on, and didn't slacken its speed. It knocked Bryant down. I could not tell what part it struck; I know it struck him enough to knock him down. I saw it strike him. There was a street light burning at that point. After Bryant was knocked

down he hollered; it knocked him on the track right in front of the car about as far as across that table [indicating about a yard and a half]. He could not do anything, because the car was running so fast, just ran right upon him before he had a chance to do it. There was an automobile coming along about that time just in front of the street-car. The street-car was gaining on the automobile. I was in the street at the time the automobile came by. I stepped back to the curb, and Bryant stepped towards the car line. Bryant had gone out into the street before I did; he stepped off first, and I stepped off behind him. I was going away" (on the street car). Eliza Tolls, testified: "When it came back I saw the front part of the street-car first. It came over the hill. Bryant went out and waved it down; he held up his right hand. It didn't stop; it didn't slow up. There was nothing to keep the motorman from seeing Bryant standing there, plenty of lights. I stepped out into the street not very far from the curbstone, because I saw the street-car was not going to stop. I went back on the curbstone. I saw the car come along, but the truck was in ahead of the street-car. Bryant was struck by the street-car. At the time Bryant was struck the truck was ahead of the street-car, going right straight up the street about half way of the block. It stopped after the street-car struck Bryant. Just to the other street. Bryant was then underneath the car, hollering. . . The street-car and automobile were lighted. The street-car seemed to be coming at a great speed, I have never seen one go faster. I did not see the motorman make any effort to stop the car before he struck Bryant. There was nothing to keep the motorman from seeing Bryant standing there; no gong or bell on the street-car was ever rung. . . When Bryant was between the street-car and the truck I was turning around going back to the curbstone. I didn't quite get on to the curbstone before Bryant was hit. Bryant jumped back towards the street-car to get out of the way of the truck, which was not out of the way of him. He jumped towards the street-car and was hit by it. He had to jump one way. He didn't jump right in front of the street-car; jumped on the side. It was nearer for him to step towards the street-car than to the side of the curbing to get out of the way of the automobile. That is why he stepped. He jumped back from the truck. He didn't jump into the street-car; the street-car struck him. He jumped

in the way of the street-car, and the street-car struck him. He jumped in the way of the front part."

From the foregoing evidence we can not say as a matter of law that the plaintiff was guilty of such negligence as would bar a recovery. We are of the opinion that this is a question of fact for a jury to determine. There are decisions which hold that if a person who is momentarily confronted by imminent danger takes a step or two in the wrong direction, and a collision results, he is not for that reason chargeable with contributory negligence. Stack *v.* East St. L. Ry. Co., 245 Ill. 308 (4) (92 N. E. 241, 137 Am. St. R. 318). In 20 R. C. L. 29, § 22, the rule in cases of emergency, or sudden peril, as affecting one's judgment, is stated as follows: "Anything which operates to deprive a person of ability to exercise his intellectual powers and guide his acts thereby will relieve him of an imputation of negligence that otherwise might arise from his conduct. Emergencies or sudden perils illustrate this proposition. The rule judicially stated is that one who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence." In Chattanooga El. Ry. Co. *v.* Cooper, 109 Tenn. 308 (70 S. W. 72), the Supreme Court of Tennessee, held: "Where plaintiff's decedent was killed by the negligence of the motorman of a street-car while he was attempting to escape from an approaching automobile, he was not debarred from claiming immunity from contributory negligence on the ground that he was placed in a sudden peril, and, losing his self-possession, made a mistake of judgment, by reason of the fact that the peril producing the confusion of judgment and the consequent false effort to escape was not the negligent act of defendant." And see to the same effect 17 2d Dec. Dig. 122, 72, and numerous cases cited under the title "Acts in Emergencies" on page 71. And see also note to the case of Lemay *v.* Springfield Street Ry. Co., 37 L. R. A. (N. S.) 55 c, Emergency Caused by Other Agencies.

In the case of *Pacetti* v. *Central of Ga. Ry. Co.,* 6 *Ga. App.* 97 (2) (64 S. E. 302), the Court of Appeals held: "Persons confronted by a dangerous situation or by an emergency, or other circumstances likely to impair judgment and ordinary discretion, are not held to the same quantum of care as they would be otherwise.

The question as to whether the plaintiff was guilty of such contributory negligence as to defeat her cause of action for defendant's negligence is issuable under the facts alleged in the petition." And see *Smith* v. *W. & T. R. Co.,* 83 *Ga.* 671 (10 S. E. 361) ; *Bennett* v. *Central of Ga. Ry. Co.,* 6 *Ga. App.* 185 (64 S. E. 700); *Martin* v. *McAfee,* 31 *Ga. App.* 690 (122 S. E. 71); *Dabbs* v. *Rome Ry. &c. Co.,* 8 *Ga. App.* 350 (3) (69 S. E. 38); *Ga. Ry. & Power Co.* v. *Gilleland,* 133 *Ga.* 621, 630 (66 S. E. 944). In the case of *Howard* v. *Savannah Electric Co.,* 140 *Ga.* 482, 484 (79 S. E. 112), this court said that at public street crossings the public have the right to expect that street-cars will be under control. The public have never surrendered the use of the streets; and that being so, the deceased had the right to expect that the street-car would be under control at the crossing where he was injured, especially as this was where he had signaled the motorman, indicating that he, or those with him, expected to become passengers upon the car. The decedent therefore was not a trespasser, but was where he had a right to be under the law. He also had a right to assume that the automobile would be under control at such place, and when it veered towards him and he stepped towards the street-car he had the right to expect that the street-car would be under control and would not run past the crossing at a high rate of speed, as the evidence shows it was doing when the decedent was injured and killed. Whether under all these circumstances the decedent was guilty of such contributory negligence, in stepping out of the way of the automobile towards the street-car, as would bar his widow from the right to recover damages for his death, is a question of fact for a jury to decide, and not a question of law for the court.

The Court of Appeals cites in favor of its decision affirming the judgment of the lower court, two cases, *Briscoe* v. *Southern Ry. Co.,* 103 *Ga.* 224, and *Shroeder* v. *Ga. Ry. & El. Co.,* 142 *Ga.* 173 (supra). We are of the opinion that these two cases are distinguishable from the present case. In the *Briscoe* case this court held: "No one is entitled to relief from the consequences of neglecting to exercise ordinary care for his own protection and safety because failure to do so arose from an emergency *brought about by his own act* [italics ours] in voluntarily placing himself in a situation of peril." In the present case the jury might find

that the emergency was not caused by the act of plaintiff's husband. Under the facts as stated in the *Briscoe* case he was a trespasser and brought about the emergency which caused the injury, and therefore the decision in that case was right. In the *Shroeder* case it appears from the decision that plaintiff and her husband at the time they first saw the car which they desired to board were not at the regular stopping-place, or on the north side of the street where they should have been in order to signal and take the car, but were on the south side about one hundred feet away from the stopping-place. After they saw the car rapidly coming over the bridge, plaintiff and her husband started for the street on the south or left-hand side towards the stopping-place. After going on the sidewalk about fifty feet towards the stopping-place they stepped off into the street, and plaintiff then threw up her hand as a signal for the motorman to stop, at the time looking towards the car and seeing that it was rapidly approaching. She continued on towards the stopping-place, not on the track that the car was on, but on the other track, or between the tracks, and in a place of safety. From the time plaintiff left the office of the Stocks Coal Co., to the time she was hit by the car, she knew that it was coming. She had seen it, and as she left the office, and when within some fifty feet of the crossing, she turned and saw it again, and during the whole time knew that it was rapidly approaching the crossing, though, she testified, when she looked back just before reaching the crossing she was under the impression it was stopping. The car was then some fifty feet from her, and she had some five or six feet further to go before reaching the point for the car to stop. After looking again to see how far the car was away or to ascertain its speed, she turned just as the car reached her and attempted to cross the track in front of it; and as she made the first step towards crossing the track that the car was on, it struck her. It will be seen, therefore, that the facts of the *Shroeder* case and of the case at bar are widely different.

*Judgment reversed. Beck, P. J., and Gilbert, J., dissent. The other Justices concur.*

GILBERT, J. It is with extreme regret that I feel obliged to dissent from the judgment rendered by my esteemed colleagues. I am forced to dissent for the reason that, in my opinion, the manner of disposing of the case is clearly in violation of the principles

ruled in our previous cases recently decided, and of decisions of the United States Supreme Court which we have stated this court would follow. Instead of a reversal, the judgment should have been a dismissal of the writ of certiorari. The uniform adherence to former decisions, until reviewed and overruled, is of more importance than the result of any single case.

At the beginning of the opinion concurred in by the majority it is said: "The sole question to be determined is whether the Court of Appeals, in affirming the judgment of the trial court in awarding a nonsuit, committed error." In the first headnote, the majority of the court have said: "Whether such person, who, in such an emergency and in order to avoid being struck by the automobile, jumps toward the street-car and is injured thereby, was *guilty of contributory negligence so as to defeat an action for damages, is a question of fact for the jury to determine.*" [Emphasis mine.] In the opinion it is explicitly stated the question is one of fact and "not a question of law." As I view the case, it is simply an ordinary suit for damages based on personal injuries. After the plaintiff's evidence was submitted, the court granted a nonsuit. Under the rules and previous decisions, this does not make a case which will authorize this court to grant a certiorari, nor, after granting a certiorari, to decide the question. The proper course would have been to dismiss the writ of certiorari, as improvidently granted. That has been repeatedly done in other cases, and the rule should be uniformly enforced. Certainly the rule should be as uniformly applied and enforced as the nature of the rule permits. The case has been decided on the theory that it involves a question of great gravity and importance to the public. And yet the majority explicitly state that only a question of fact for the jury is involved; that is, whether the injured party so contributed to the injury as to preclude a recovery.

In *Lynch* v. *Southern Express Co.,* 146 *Ga.* 68, 71 (90 S. E. 527), this court discussed elaborately whether the direction of a verdict presented a question of law or a question of fact. The principle is the same whether the court directs a nonsuit or directs a verdict. In both instances, the court passes upon the question without submitting any issue to the jury. In the *Lynch* case the court was dealing with a certified question, and the question required this court to determine the difference between a

question of fact and a question of law. The constitution of Georgia provides: "The Court of Appeals may at any time certify to the Supreme Court any other question of law concerning which it desires the instruction," etc. This court said: "There can be no doubt that the words, 'question of law,' as used in the constitution, considered abstractly or in connection with the context, were not intended to embrace a question of fact, or a mixed question of law and fact; the manifest object being to submit to the Supreme Court a definite question of law. The propriety of granting a nonsuit or of directing a verdict depends upon the effect to be given the evidence." After citing numerous decisions of the Supreme Court of the United States, this court concluded the opinion concurred in by all the Justices: "We therefore conclude that no question of law is presented in the question." In the *Lynch* case this court was construing the constitution as it existed prior to the amendment of 1916. The amendment, however, does not in any way change or alter the character of questions that may be certified by the Court of Appeals to the Supreme Court. Subsequently to the ratification of the amendment of 1916 this court, in *L. & N. R. Co.* v. *Hood,* 149 *Ga.* 829, 836 (102 S. E. 521), discussed the question of whether or not the amendment did make a change in the constitution in this respect. It was there said, all the Justices concurring: "The language of these two provisions as to the certification of questions to the Supreme Court for instruction is somewhat different, but we do not think it was the purpose of the legislature proposing this latter amendment to the constitution to change the character of the questions which might be certified to the Supreme Court." Therefore the decision of this court that only questions of law can be certified still stands as binding upon this court. See, in this connection, *English* v. *Rosenkrantz,* 150 *Ga.* 817, 819 (105 S. E. 613) ; *Clark* v. *Fire Assn.,* 159 *Ga.* 567 (126 S. E. 387).

From a consideration of the provisions of the constitution appertaining, and from decisions of this court construing the same, it is clear that the intention of the legislature was to permit a review by this court either by writ of certiorari or of certified questions of certain designated character pending in the Court of Appeals. Whether by certified question or by certiorari, it was never intended that litigants who had had the benefit of submitting their

issues of fact to a jury and again to the trial judges, and then obtaining a review by the Court of Appeals, should have an additional review of facts by the Supreme Court. The additional view provided by the constitution is clearly restricted to issues of law unmixed with fact, and in a case of certiorari the issues of law must be of great gravity and public importance. In *Jones* v. *Pacific Fire Insurance Co.*, 159 *Ga.* 248 (125 S. E. 470), we construed the constitutional provision to restrict certiorari to questions of law. And in that case, when, after grant of certiorari, it was ascertained that the question was one of fact, the writ was dismissed on the ground that it was improvidently granted. In this we followed the practice of the United States Supreme Court. In *L. & N. R. Co.* v. *Tomlin,* 161 *Ga.* 749 (132 S. E. 90), we approved the *Jones* case, supra, and dismissed the writ of certiorari. It will be observed that the court, in the *Lynch* case, placed the granting of a nonsuit and the direction of a verdict on the same basis. It is not contended that in the granting of a nonsuit or the direction of a verdict there may not be incidental questions of law to be construed in order to properly weigh the evidence, but this necessarily forms mixed questions of law and fact. This is more or less true in every case. In *Central of Ga. R. Co.* v. *Yesbik,* 146 *Ga.* 620 (91 S. E. 873), dealing for the first time with the question of the granting of certiorari by this court, it was said: "Great caution will be exercised, and the writ issued only in cases involving questions of great public concern and in matters of gravity and importance." Subsequently, in again dealing with the same question, we were called upon to decide whether the class of the cases spoken of in the *Yesbik* case included questions involving issues of law or fact or both; and it was held that this court would grant certiorari only in cases involving questions of law of great public concern, etc., and if granted, and after argument and consideration of the case it should be ascertained that only questions of fact were involved or that the questions of law were not questions of great gravity and importance, the writ would be dismissed. In that case the authorities on the question were collected and cited. *L. & N. R. Co.* v. *Tomlin,* supra.

Presiding Justice Evans, speaking for the entire court in the *Yesbik* case, said: "This court . . should be chary of action in respect to certiorari. . . It was not intended that in every case

a complaining party should have more than one right of review." Chief Justice Russell, speaking for the entire court in *King* v. *State,* 155 *Ga.* 707, at p. 712 (118 S. E. 370), said: "It was not the purpose of the amendment of 1916 . . that such review was conferred upon all litigants as a matter of right. If this had been true, there would be little reason for the existence of the Court of Appeals," etc. In the *L. & N.* case, supra, we approved and reiterated the solemn words of caution uttered by the U. S. Supreme Court in Layne *v.* Western Well Works, 261 U. S. 387 (43 Sup. Ct. 422, 67 L. ed. 712) : "It is very important that we be consistent in not granting the writ of certiorari except in cases involving principles the settlement of which is of importance to the public as distinguished from that of the parties, and in cases where there is a real and embarrassing conflict of opinion and authority between the circuit courts of appeal." I can not bring myself to the conclusion that this court is justified, immediately after dismissing a case like the *Tomlin* case, to consider and decide an ordinary personal-injury damage suit where the only question was one of fact, that is, whether the injured person under the facts of the case was guilty of contributory negligence to such extent as to defeat a recovery. To my mind, the only safe and just procedure is for this court to pursue a uniform rule. Having adopted such a rule, it should not be abandoned except in the manner provided by law and the constitution of Georgia. I am authorized to say that Presiding Justice Beck concurs in this dissent.