## A96A2095. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY v. MEHRETAB.
(480 SE2d 310)

BIRDSONG, Presiding Judge.

Metropolitan Atlanta Rapid Transit Authority ("MARTA") appeals a judgment based on a jury verdict in favor of Mesfin Mehretab on his claims arising from an automobile accident in which a MARTA bus pulled into Mehretab's lane of traffic and forced him off the road and into a sign. The witnesses testified that Mehretab and a MARTA bus were traveling in the same direction on a multi-lane street when a third vehicle pulled into the lane of travel of the MARTA bus. When the bus then pulled into Mehretab's lane of travel, Mehretab ran off the road. The MARTA bus did not stop, and no MARTA bus driver admitted any role in the accident.

At the trial, the trial court initially gave a charge on sudden emergency, but upon Mehretab's objection later withdrew the charge from the jury's consideration. MARTA contends the trial court erred by withdrawing the defense of sudden emergency from the jury, by denying MARTA's motion for a directed verdict, and by denying MARTA's motion for judgment n.o.v. or in the alternative a new trial. *Held*:

1. The trial court did not err by withdrawing the defense of sudden emergency. Although under appropriate circumstances, the defense of sudden emergency might be established without the testi-

mony of the person faced with the emergency, this is not one of those cases. "The defense of emergency is not available unless the evidence shows that there has been a sudden peril caused by circumstances in which the defendant did not participate and which offered him a choice of conduct without time for thought so that negligence *in his choice* might be attributable not to lack of care but to lack of time to assess the situation. . . . The doctrine requires that the person confronted by the emergency have the opportunity to exercise one of several reasonable alternative courses of action. In the absence of such factors, there can be no conduct to which to apply the standard and the doctrine is inapplicable." (Citation and punctuation omitted; emphasis in original.) *Thomas v. Stairs*, 215 Ga. App. 288, 289 (450 SE2d 326). Here there is no evidence a MARTA driver, while driving without negligence, perceived that he was faced with a sudden emergency and then exercised an unplanned choice in the matter. See *Johnston v. Woody*, 148 Ga. App. 152, 153 (250 SE2d 873). *All* the MARTA bus drivers called as witnesses, who drove the bus route on the day and time of the incident, denied having been involved in any such incident. This testimony effectively destroyed any claim of sudden emergency. Even if this testimony shows, as MARTA claims, the bus driver was unaware of the accident, that is not sufficient to establish this defense because there is no evidence that the MARTA driver was not himself negligent, actually was faced with an emergency, or took an unplanned choice. See *Davis v. Calhoun*, 128 Ga. App. 104, 105 (195 SE2d 759). Moreover, the blind spot, mentioned by the dissent, had nothing to do with this incident; the blind spot is immediately behind the bus in the same lane. Neither the white pickup truck nor Mehretab's car was located in that position.

Although we do not disagree with the dissent's basic proposition that a jury charge on sudden emergency does not require testimony from the person who may have faced a sudden peril and would agree that standing alone the testimony from the other witnesses would authorize a sudden emergency charge, we cannot agree that such a charge was authorized by the evidence in this case because of the drivers' testimony. What the dissent proposes would allow MARTA to have its cake (by disclaiming any involvement in the collision before the jury) and eat it too (by claiming that if the MARTA bus did cause the collision, it was the result of a sudden emergency). Our law, however, does not allow that result. MARTA did not assert that some missing bus driver caused the collision; instead, it called *all* the drivers who might have been involved and had each of them testify that although they remembered driving that route on the day in question, they did not remember any white truck pulling into their lane and causing them to change lanes abruptly. Such testimony denies that any bus driver faced a sudden peril — the essential element of the

defense of sudden emergency — and denies that MARTA's driver made a choice of action without time for thought. See *Thomas v. Stairs*, supra; *Johnson v. Woody*, supra. By having its witnesses testify in this fashion, MARTA disproved the essential elements of the sudden emergency defense. Further, under the evidence MARTA presented denying any involvement in the incident, it is disingenuous to assert that MARTA did not deny that the incident took place. Unless MARTA's purpose was to show that all of the bus drivers on the route that day had bad memories, what was the purpose of calling each of them to deny any recollection of a white pickup truck pulling into the drivers' lane of travel? If MARTA truly wanted to show that the drivers were unaware that a car was forced off the road, why then was that question not asked?

There is no competent evidence establishing the defense of sudden emergency. The dissent's reliance upon the other witnesses' perception of the event is misplaced. The dissent assumes the MARTA driver shared these perceptions and assumes these perceptions caused the bus driver's actions. This focus, however, ignores the bus drivers' denials that they were involved in any incident. Although it is possible a bus driver faced the emergency the witnesses perceived and acted as these witnesses believe (and forgot it happened or lied about it on the witness stand), it is equally possible the bus driver involved did not consider the white pickup truck pulling into his lane as an emergency, pulled into Mehretab's lane for some other reason, and negligently caused Mehretab to hit the sign. The testimony of these other witnesses is perfectly consistent with either possibility. Yet, to find a charge on sudden emergency warranted from this testimony, however, one must accept the first possibility as established fact, and reject the second. That cannot be done.

Although the witnesses' testimony about what they saw is direct evidence, their testimony explaining why these events occurred, and particularly why the bus driver pulled into the other lane, is only their inadmissible guess about the bus driver's motivation. At best, this testimony might be circumstantial evidence from which one could infer that the bus driver was faced with a sudden emergency and acted for that reason. Because this testimony is circumstantial evidence, however, it cannot overcome the unimpeached, direct evidence from MARTA's bus drivers that none of them faced the sudden emergency.

"The test is whether the circumstantial evidence is 'perfectly consistent' or 'inconsistent' with the direct evidence. Circumstantial evidence which could be taken as *inconsistent* with the direct, positive testimony is sufficient to get the case to a jury. However, the rule where the circumstantial evidence is *consistent* with the direct, positive testimony is different. Circumstantial evidence from which the

existence of a fact might be inferred, but which did not demand a finding for [MARTA] to that effect, will not support a verdict, when by positive and uncontradicted testimony of unimpeached witnesses, which was perfectly consistent with the circumstantial evidence relied on by [MARTA], it was affirmatively shown that no such fact existed." (Citation and punctuation omitted; emphasis in original.) *Douglas v. Gilbert*, 195 Ga. App. 796, 798 (395 SE2d 9). Consequently, the testimony from the other witnesses was not evidence sufficient to warrant a charge on sudden emergency.

In reaching this result, we recognize that a jury charge is authorized if some evidence exists from which a legitimate process of reasoning can be carried on in respect to the charge even if the great preponderance of the evidence is to the contrary. *Lyles v. State*, 130 Ga. 294 (60 SE 578); *T.G.&Y. Stores Co. v. Waters*, 175 Ga. App. 884, 886 (334 SE2d 910). In this case, however, the testimony of the other witnesses simply was not such evidence.

Because MARTA's motion for a new trial was based upon the trial court's withdrawing this defense from the jury, the trial court also did not err by denying the motion for new trial.

2. MARTA's contention that the trial court erred by denying its motions for a directed verdict and judgment n.o.v. because Mehretab's evidence did not show that MARTA was negligent is also without merit. "In determining whether the trial court erred by denying appellants' motions for a directed verdict and motion for judgment n.o.v., this court must view and resolve the evidence and any doubt or ambiguity in favor of the verdict. A directed verdict (and judgment n.o.v.) is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, *demands* a certain verdict." (Citations and punctuation omitted; emphasis in original.) *Southern Store &c. Co. v. Maddox*, 195 Ga. App. 2, 3 (392 SE2d 268). "The motion for judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a 'one-way' verdict proper, judgment n.o.v. should not be awarded. In considering the motion, the court must view the evidence in the light most favorable to the party who secured the jury verdict. And this approach governs the actions of appellate courts as well as trial courts." (Citations and punctuation omitted.) *Denson v. City of Atlanta*, 202 Ga. App. 325, 326 (414 SE2d 312). As the witnesses testified that the MARTA bus suddenly veered into Mehretab's lane of traffic causing him to run off the road, it cannot be said that no evidence supported Mehretab's negligence claim against MARTA. Therefore, the trial court properly submitted the issue to the jury, and then did not err by denying the

motion for judgment n.o.v.

*Judgment affirmed. McMurray, P. J., Johnson, Blackburn, Smith and Ruffin, JJ., concur. Andrews, C. J., Pope, P. J., and Beasley, J., dissent.*

BEASLEY, Judge, dissenting.

I agree that defendant was not entitled to a directed verdict or judgment n.o.v., as held in Division 2, but it is entitled to a new trial in which the jury is permitted to consider the defense of sudden emergency, contrary to the holding in Division 1.

Two of plaintiff's witnesses saw the incident occur. They were bystanders, sitting on the second-story deck of the restaurant in front of which plaintiff collided with the pole bearing the restaurant sign. Both testified that a white pickup truck which was to the left of the bus and partially ahead of it suddenly turned to the right, cutting off the forward movement of the bus. The bus driver reacted by moving the bus to the right, which caused plaintiff, in a 1992 Honda Accord traveling next to the bus, to also turn to the right to avoid the bus. He hit his brakes, skidded, and hit the pole.

Witness Davis testified that the truck "cut off the bus and the bus reacted by swerving, eventually into . . . the far right lane. . . . [The truck] was almost past [the bus] when it moved over, but it wasn't quite. All I know is that if the bus had not reacted, the truck would have struck the bus if the bus did not react." When asked whether he observed any reason the bus driver did not slow for the truck and let it into the center lane, the witness responded: "Well, first of all, the truck, it didn't — it looked like the truck just all of a sudden said, Whoa. I got to get over, and I am going to do this. I don't remember seeing blinkers or anything. I just remember that it just immediately took a bolt into the next lane, you know."

Witness Woodall, who had been idly watching the vehicles come up the street, saw the truck come into the bus driver's lane and the bus move into the curb lane as a result. The front of plaintiff's car was about midway the length of the bus. When the truck cut in front of the bus, it appeared that the bus driver "just turned the wheel to get over from hitting the truck and going into the other lane." The truck had not cleared the bus when it turned into the center lane, "[s]o when the truck came over, the bus went over." Part of the truck was still beside the bus when "the truck darted in front of the bus." When asked what would have happened if the bus had not moved to the right, witness Woodall stated: "The bus would have ate the truck if he wouldn't have moved. Excuse my slang." He explained: "If the bus wouldn't have come over, the bus would have collided with the truck. There would have been no way. The only way he could have stopped it was either slowing down or moving out of its way, and he

moved out of its way instead of slowing down." All of this happened very quickly. He told the officer on the scene that the "white pickup truck ran MARTA bus over into plaintiff's lane."

These two witnesses had a clear view of the occurrence. Plaintiff himself testified that he noticed the white truck "trying to be fast going in and out in between [vehicles] . . . and . . . just switching the lanes" as the traffic moved up the street. The driver appeared to be trying to get in front of everybody and seemed to be in a hurry. Plaintiff was beside the rear of the bus, when the bus "jumped" into his lane, without using turn signal or horn, and stayed in that lane as it moved up the street. It did not hit plaintiff's car. Plaintiff could not see the truck when it was on the other side of the bus so he did not observe its movement, although he agreed that when the case was first filed, he alleged that "the pickup truck immediately to the left of the MARTA bus suddenly and without warning came into the lane of the MARTA bus." He explained that he was not 100 percent sure how it happened, but he guessed that is what occurred because he saw the truck and saw it zigzagging, "and my understanding maybe that truck pulled on the side of him and forcing, but how it happened, how the transaction, whatever the thing happened, I don't have any clue." When the bus moved into his lane, he shifted the clutch and put on the brake and the hand brake and hit the pole.

The majority concludes that MARTA was not entitled to a charge on sudden emergency because it disclaimed any involvement in the accident, in that it called the seven drivers who drove buses that afternoon on that route and had each of them affirmatively deny that any white truck suddenly pulled into their lane. The record shows that the MARTA bus drivers did not give such testimony. Rather, they testified that they did not recall such an incident. None was aware of it. One of the drivers did testify that he saw the wrecked car against the pole when traveling in the opposite direction later, going into Atlanta. This driver also testified that when driving the bus, there is a blind spot behind it. Thus, MARTA did not deny that the incident took place. In fact, it relies on the testimony of bystanders with respect to how it occurred.

Thus there was direct physical evidence in the form of what the eyewitnesses saw occur, which supported the theory that the bus driver was faced with a sudden emergency created by the driver of the pickup truck, and there was no evidence to contradict it. This evidence also provided a reason for the bus driver's action. Of course, whether the action taken was negligent or not is a jury question, but the law does not require the actor himself to testify that he was confronted with a sudden emergency. A sudden emergency " 'may properly be defined as any event or combination of circumstances which call for immediate action without giving time for the deliberate exer-

cise of judgment or discretion, in short, an exigency.'" (Citation omitted.) *Ware v. Alston*, 112 Ga. App. 627, 629 (145 SE2d 721) (1965). See also *Luke v. Spicer*, 194 Ga. App. 183, 184 (3) (390 SE2d 267) (1990). There is no reason that proof of the event or combination of circumstances which creates the emergency cannot be established by the testimony of observers. What was seen in the instant case to occur is evidence that a sudden emergency was presented to the bus driver by the veering of the truck into the bus driver's lane, that the bus driver realized that the truck would hit the bus if some evasive action was not taken, and that he chose to move the bus away from the advancing truck into the next lane, which was empty adjacent to the front of the bus. There is no evidence that the bus driver knew, or should have known, that plaintiff was at the rear of the bus when the bus driver moved the bus to avoid a collision with the truck. The bystanders watched the situation develop, watched the emergency materialize, and observed what the bus driver did to avert it. I do not agree with the majority that "there is no evidence the MARTA driver, while driving without negligence, perceived that he was faced with a sudden emergency and exercised an unplanned choice in the matter."

Indeed, the actor may be killed in the incident brought about by the sudden emergency, or may suffer loss of memory due to injuries sustained, or may die following the incident but prior to trial. This handicap does not preclude the establishment of the existence of a sudden emergency. The physical factors are what establish it, and others who witness it can testify that it existed. The persuasiveness of their testimony depends on their vantage point, attention, and clarity of vision, as well as upon the strength of recollection and honesty which is common to all witnesses. *Pollard v. Weeks*, 60 Ga. App. 664, 672-673 (1) (4 SE2d 722) (1939), is a case in which sudden emergency was deemed provable by evidence other than by the person who was faced with it, acted, and was killed. As the Court reasoned, the plaintiff's decedent "was called on to act quickly under circumstances which might reasonably be found by a jury to constitute an emergency, a situation caused by the alleged negligence of the defendant. Whether or not, in the manner he responded, he was entirely free from negligence or could have avoided the consequences of the extraordinary risk which the jury would be authorized to find was present, and whether or not he was guilty of any contributory negligence, are questions for the jury." Id. at 673.

*Bryant v. Ga. R. &c. Co.*, 162 Ga. 511 (134 SE 319) (1926), is another case in which sudden emergency was shown by the testimony of eyewitnesses and not by testimony of the person who was faced with it. In that instance, too, the latter was killed, and the suit was brought by his widow.

The court in Mehretab's case charged the jury on the defense of

sudden emergency but, after discussion following plaintiff's objection to it, recharged the jury to eliminate consideration of this doctrine. The court explained that it was inapplicable because there was no testimony from the driver, and the driver himself or herself had to testify that the action taken was upon realization of peril. The withdrawal of this defense was material to the jury's deliberation, as demonstrated by its request for clarity on the definition of sudden emergency before the court withdrew the charge.

Circumstantial evidence of motive and intent is frequently admitted, when that is an issue. See *Unden v. State*, 218 Ga. App. 463, 465 (2) (462 SE2d 408) (1995). Although there is no direct evidence as to why the bus driver did not brake, there is evidence to explain why the bus driver moved the bus into the right lane. Even plaintiff used the word "forcing" in referring to the movement of the truck in relation to the forward moving bus.

The act of a third party may cause "a sudden emergency which forces a driver to choose one of two courses of conduct, either of which would, in the absence of such emergency, constitute negligence or a violation of a statute, but which, because of the emergency, becomes necessary either in self-defense or to avoid a greater injury than that which in fact resulted." *Cruse v. Taylor*, 89 Ga. App. 611, 617 (2) (80 SE2d 704) (1954).

The majority also concludes that the testimony of the eyewitnesses to the accident would not support a charge on sudden emergency, because their testimony is "perfectly consistent" with either of two possibilities: (1) that a bus driver faced the emergency the witnesses perceived and acted as these witnesses believed, or (2) that the bus driver involved was unaware of any emergency and negligently caused Mehretab to hit the sign. While the eyewitnesses' testimony technically does not exclude the second possibility, a jury could find that it preponderates toward the first. To hold that such testimony does not warrant a charge on sudden emergency is to embrace the very proposition which the majority purports to reject, i.e., that a jury charge on sudden emergency does not require testimony from the person who may have faced a sudden peril.

I am authorized to state that Chief Judge Andrews and Presiding Judge Pope join in this dissent.

DECIDED JANUARY 16, 1997 — ■

*David R. Autry*, for appellant.
*Andrew W. Estes, E. Graydon Shuford*, for appellee.